JOHN W. TEMPLE *vs.* JAMES B. TURNER.
EDMUND WATFORD *vs.* EDWARD ELLIS.

Suffolk. March 6. — Sept. 7, 1877. ENDICOTT & SOULE, JJ., absent.

A seaman may maintain an action against a master of a vessel for his wages, by proof that he shipped at a fixed rate of wages per month, on the vessel of which the defendant was at the time master, and served until discharged by him, although there is no other evidence of a contract made by the master with the seaman.

TWO ACTIONS OF CONTRACT, each upon an account annexed, for services on board a vessel, of which the defendant was the master.

At the trial of the first case in the Superior Court, before *Brigham,* C. J., the plaintiff testified that he shipped at London, England, upon a ship, of which the defendant was master, at the rate of £3 5s. per month in gold; that he had received certain payments of wages; that the defendant still owed him the remainder; that he served continuously on the ship from the time he shipped until he left. Another witness testified that the defendant discharged the plaintiff at his request, and said he was willing to pay him off and give him his clothes, and gave directions to his mate to deliver the clothes. It was agreed that £1 in gold should be estimated as of the value of $5.58.

The judge ordered a verdict for the defendant, and reported the case for the determination of this court.

At the trial of the second case, before *Bacon*, **J.**, the plaintiff introduced evidence tending to show similar facts to those in the first case, in regard to his service on board, and the rate of gold, and that he ceased to perform his duties on the ship by the express command of the defendant, and was ordered ashore by him. The judge ordered a verdict for the defendant, and reported the case for the determination of this court.

*J. M. Browne*, for the plaintiffs.

*O. W. Holmes, Jr.*, for the defendants. The contract under which the plaintiff in each case shipped appears to have been express, in the strictest sense, but there is no evidence as to who made it or what were its terms, and the question is whether the plaintiff has supported the burden of proving a contract personally binding the defendant, by evidence tending to show no more than that the defendant was master of the vessel. In general, to charge an agent or servant upon a contract made by the authority and for the benefit of a principal or master, it must appear that the servant made the contract, and that, if the contract was in writing, it contained apt words to charge him, or, if it was oral, that the language used authorized the credit to be given to him, and that credit was so given. An agent or servant is only charged on a contract on behalf of another on the ground that he has made it his contract. The same principles apply to the case of the master of a vessel, with regard to services performed on board a ship commanded by him. If he is charged, it is because he is shown to have made a contract, and has made it in such a form that it is his contract, on one of the grounds just stated. *Goodridge* v. *Lord*, 10 Mass. 483, 486, 487. *James* v. *Bixby*, 11 Mass. 34, 37. *Hoskins* v. *Slayton*, Cas. temp. Hardwicke, 376. *Garnham* v. *Bennett*, Stra. 816. *Rich* v. *Coe*, Cowp. 636, 639. *Farmer* v. *Davies*, 1 T. R. 108. *Hussey* v. *Christie*, 9 East, 426, 432. *Priestly* v. *Fernie*, 3 H. & C. 977, 984–986.

Especially must this be true when the contract is expressed in words, oral or written. This appears here, for the evidence is that the plaintiff shipped at a specified rate of wages, which could not otherwise have been the case. That contract not being in evidence, *non constat* who made the special promise; and if the service is rendered "on a special promise from either, the

other is discharged." *Garnham* v. *Bennett, ubi supra.* **Nor** does it appear whether it was in writing or oral, and whether, therefore, if made by an agent, it showed an intention to charge him, as a matter of construction or on the ground that credit was given to him.

The obscurity which has surrounded this class of questions arises from the fact that admiralty law has been a compound of doctrines springing from various systems at various stages of society, and cannot be understood except by the aid of history, which will also help to rid it of its incongruities. Modern authorities properly reduce the relation of shipmaster and owners to an ordinary case of agency ; but the law of agency, as now understood, is for the most part modern. It was an exception and a comparatively late innovation in the Roman law. *Mandatum* was not agency. A master might be liable for his slave, but not one *paterfamilias* for the act of another. A free citizen *sui juris* was liable for his own acts if anybody was. On special grounds of policy, the prætor allowed the master of a ship, of whatever condition, to impose a liability on the owner in certain cases. D. 14, 1, 1, § 4. But the fiction by which one freeman is wholly absorbed under the *persona* of another was not then developed, and the liability of the person actually making the contract, which was the only liability known to the old law, remained, notwithstanding the secondary responsibility which was added to it. The mediæval maritime law showed a further development. The master could bind the ship, although on modern principles he was in no sense the agent of the owners to whom the ship belonged. Traces of this doctrine still remain, indeed, in the admiralty law, although it is disappearing. But at that time he could not bind the owners personally. Now, however, the conception of agency has been developed, and the master can bind the owners on the one hand, while, on the other, the liability of the ship in most cases, and that of the owners in all, is determined by considering what actual or seeming authority the master had to represent them. But it is part of the law of agency that a man may make himself a mere conduit pipe, through which a contract moves from his principal. And, as the responsibility of the superior is wholly determined by that law, 't is supposed that the same is true of the inferior, as laid down in *Priestly* v. *Fernie,* already cited.

In the present case, it does not appear that the defendant was even on board the ship when the plaintiff made his contract, or had anything to do with engaging the plaintiff. If he did not personally make the contract, the only possible foundation for charging him disappears. *Farmer* v. *Davies*, 1 T. R. 108.

GRAY, C. J.  The general rule is everywhere recognized that a seaman has a threefold remedy for his wages, against the master, the owner, or the ship, and may proceed, at his election, against either of the three in the admiralty, or against the master or the owner at common law. *The Jack Park*, 4 C. Rob. 308, 311. *Aspinwall* v. *Bartlet*, 8 Mass. 483, 486. Abbott on Shipping, pt. 5, *c.* 4. 3 Kent Com. 196. "It is an established rule," said Dr. Lushington, "so ancient that I know not its origin, that the seamen may recover their wages against the master." *The Salacia*, Lush. 545, 548. The liability of the master has sometimes been put upon the ground of his relation to the seamen, and his right to receive the freight out of which their wages are to be paid. But the reason commonly assigned, and a sufficient one for these cases, is that, according to the usual practice in the merchant service, the master makes an express contract with the seamen. *Bayly* v. *Grant*, 1 Salk. 33. *Buck* v. *Rawlinson*, 1 Bro. P. C. (2d ed.) 137. *Mayo* v. *Harding*, 6 Mass. 300. *Bishop* v. *Shepherd*, 23 Pick. 492, 495. *Wysham* v. *Rossen*, 11 Johns. 72. The English statutes and our own from early times have provided for such contracts. Sts. 2 Geo. II. *c.* 36; 2 Geo. III. *c.* 31; 17 & 18 Vict. *c.* 104, § 149. Mass. Col. St. 1668; 4 Mass. Col. Rec. pt. ii. 390, 391; Anc. Chart. 717, 718. U. S. St. July 20, 1790, § 1. U. S. Rev. Sts. § 4520. It is not to be presumed, without the most positive and satisfactory proof, that the crew gave exclusive credit to the owner. Story on Agency, § 299. *United States* v. *Haines*, 5 Mason, 272, 275.

It follows that the evidence introduced at the trial of each of these cases was sufficient to maintain the action, and that the verdicts which were ordered for the defendants must be

*Set aside.*