GEORGE S. EDDY *vs.* OWEN O'HARA & trustee.

Bristol. Oct. 26, 1881. — Jan. 2, 1882. MORTON & ALLEN, JJ., absent.

Whether the wages of a seaman on a coasting voyage are subject to attachment by the trustee process — *quære.*

The owners of a coasting vessel, who, after having been summoned as trustees in foreign attachment of a seaman, are compelled by subsequent process from a court of admiralty upon a libel filed by him against the vessel, and by the judgment of that court in his favor, after disclosure of all the facts relating to the trustee process, to pay to him the amount of his wages, will not be charged as trustees for the same sum.

GRAY, C. J. This is an action of contract, brought on January 23, 1880, in the Second District Court of Bristol, to recover the sum of $60. The Old Colony Steamboat Company, a corporation established by law in this Commonwealth and having a place of business at Fall River, summoned as trustee of the principal defendant, answered that, at the time of the service of the writ upon it, he was employed as a seaman on board one of its steamboats, the City of New Bedford, and it owed him the sum of $36.20, and had no other goods, effects or credits of his in its hands; and that he had since brought suit for all wages due him in the District Court of the United States for the Southern District of New York, which suit was still pending. The Second District Court of Bristol gave judgment for the plaintiff for the sum sued for, and charged the trustee.

From that judgment the trustee appealed to the Superior Court, and there filed a further answer, stating that it was a common carrier by water between the port of Fall River in this Commonwealth and the port of New York in the State of New York, its course being through the waters of Mount Hope Bay, Narragansett Bay, Long Island Sound, New York Bay and the East and North Rivers; that, before and at the time of the service of this process upon it, the principal defendant was regularly employed by it as a seaman on one of its freight steamboats in making trips between those ports and over that course; that it owed him as such seaman for wages the sum of $36.20; that he had since brought suit for all wages due him as aforesaid in a court of admiralty, to wit, in the District Court of the United States for the Southern District of New York, in which the

trustee appeared and set up in defence that it had been served with process in this action as aforesaid, and that court after full hearing decided that his wages were not attachable, but were exempt from attachment, and rendered judgment against it for all wages due him as aforesaid; and that it had been compelled to pay and satisfy that judgment, there being no right of appeal therefrom because the amount thereof was less than fifty dollars. The Superior Court discharged the trustee, and the plaintiff appealed to this court.

Three questions have been presented and argued: 1st. Whether a seaman's wages are attachable by trustee process? 2d. Whether an attachment of such wages by trustee process in a court of common law should preclude the seaman from suing for and recovering his wages in a court of admiralty? 3d. Whether the alleged trustee, having been summoned into a court of admiralty having jurisdiction of the subject matter and of the parties, and having disclosed to that court all the material facts, including the pendency of this process, and having been compelled by the judgment of that court to pay the amount of the wages to the seaman, can now be charged for the same amount in this action?

The opinion of Judge Benedict in the suit in admiralty in the District Court of the United States for the Southern District of New York, a certified copy of which was submitted to us at the argument, shows that that suit was a libel *in rem* by the seaman against the steamboat, in which the steamboat company appeared as claimant, and pleaded in bar of the libel the proceedings and judgment in the Second District Court of Bristol in this action; and that the libellant's exceptions to that answer were allowed, upon the ground that seamen's wages are exempt from attachment for their debts. *S. C. nom. McCarty* v. *City of New Bedford*, 4 Fed. Rep. 818. But, although that conclusion is supported by an elaborate and forcible argument, we have not been able to satisfy ourselves that such an exemption has ever before been recognized, except as created and limited by express statute or ordinance.

The provision of the Consolato del Mare, to which the learned judge refers, would seem to be a statement of the doctrine that seamen's wages are to be preferred to all other claims upon the

ship, and to have no regard to creditors of the seamen themselves. See Consulat de la Mer (ed. Boucher), *cc.* 138, 139; (Pardessus Coll.) *c.* 94; 2 Molloy, *c.* 3, § 7; 3 Kent Com. 197; *Pitman* v. *Hooper*, 3 Sumner, 50, 58. The Ordonnance de la Marine of 1681 contained no regulation as to creditors of seamen, and the supplemental ordinance of 1745 went no farther than to exempt their wages from the claims of their creditors, unless for rent or necessaries, or for goods supplied to them with the assent of certain public officers. 1 Valin, 712, 713.

The right of seamen to proceed jointly in admiralty against the ship was recognized by the common law of England, independently of any act of Parliament. Winch, 8. *Anon.* 1 Ventr. 343. Scobell's Ordinances, 147. Pollexfen *arguendo* in *Coffart* v. *Lawdley*, 3 Mod. 244, 245. Lord Holt in *Clay* v. *Sudgrave*, 1 Salk. 33; *S. C.* Holt, 595; 12 Mod. 405. But assignments by seamen of their wages were valid until prohibited by statute. *Crouch* v. *Martin*, 2 Vern. 595; *S. C.* 1 Eq. Cas. Ab. 45, pl. 7.

In Massachusetts, the Colonial statute of 1668 for the regulation of navigation and maritime affairs provided no more than this : " Masters shall see that their officers and mariners be duly paid their wages according to agreement made with them, upon the finishing of their voyage, without delay or trouble, upon penalty of paying damages for neglect, and all costs that the seamen shall be at for recovering the same." 4 Mass. Col. Rec. pt. ii. 391; Anc. Chart. 718. A Colonial statute of 1682 and a Provincial statute of 1693 prohibited the giving of credit by any person to a seaman without the knowledge or consent of the master, or the granting of any process or attachment against the seaman for such debts. But the statute of 1682 was limited to foreign voyages, and the statute of 1693 was applicable only until the seaman had performed his voyage and been discharged of the same ; the object of each statute, as appears by its preamble, was not to protect the seamen, but to prevent the hindrance and injury to trade and navigation by their arrest and detention for debt; each appears to have prohibited suits, as well as attachments, against seamen ; and neither of them exempted the seaman or his wages from attachment for any lawful debt. Mass. Col. St. 1682; 5 Mass. Col. Rec. 372; Anc. Chart. 185. Prov. St. 1693–4 (5 W. & M.) *c.* 10; 1 Prov. Laws (State ed.) 142.

In 1729 the British Parliament for the first time enacted that seamen should be paid their wages by the master within thirty days after the arrival of the ship, or the discharge of the seamen, "and such payment of wages aforesaid shall be good and valid in law, notwithstanding any action, bill of sale, attachment or incumbrance whatsoever." St. 2 Geo. II. c. 36, § 7. But that act, which was continued in force by the St. of 23 Geo. II. c. 26, § 6, and was made perpetual and extended to the Colonies by the St. of 2 Geo. III. c. 31, was applicable to foreign voyages only; and no similar provision as to coasting voyages appears to have been made in England until some years after the American Revolution. St. 31 Geo. III. c. 39, § 5. Abbott on Shipping (Story's ed.) 504.

Like provisions concerning the assignment and attachment of wages of seamen, both on foreign and on coasting voyages, have since been made by the St. of 5 & 6 Will. IV. c. 19, § 12, and again by the Merchant Shipping Act of 1854, 17 & 18 Vict. c. 104, § 233, which enacts that "no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of such wages, or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of such wages, or of salvage made prior to the accruing thereof, shall bind the party making the same."

In a treatise on the customary law of foreign attachment, published in London in 1861, it is indeed said that "seamen's wages could not be attached with effect, because a summary remedy existed for their recovery by statute;" and that rent payable to the defendant by the garnishee is not attachable so long only as the landlord has the power of distress. Brandon on Foreign Attachment, 26 & note, 35. But the earlier books on the subject suggest no such reason or distinction; all of them say generally that no attachment lies for rent; and the only one that makes any mention of wages as exempt includes in the exemption "salaries and wages of every description, whether payable by government, corporate bodies or individuals." Priv. Lond. (3d ed.) 267. Com. Dig. Attachment, C, D. Ashley on Attachment, (2d ed.) 27. Locke on Attachment, 40. And the local

customs of London and other cities of England afford no safe guide in the construction of our own statutes, or in the practice under them.    *Bottom* v. *Clarke*, 7 Cush. 487, 490.

The earliest act of Congress for the government and regulation of seamen in the merchant service, while it fixed the times at which seamen's wages should be paid, and authorized their summary recovery by all seamen having like cause of complaint by one suit in admiralty against the ship, contained no provision as to the effect of attachments or assignments thereof.    U. S. St. July 20, 1790.    U. S. Rev. Sts. §§ 4530, 4546, 4547.    Nor was there any federal legislation on this point until Congress by the Merchant Shipping Act of 1872 enacted in its very words the provision of the St. of 17 & 18 Vict. *c.* 104, § 233, above quoted. U. S. St. June 7, 1872, § 61.    U. S. Rev. Sts. § 4536.    And in 1874 it was enacted that " none of the provisions " of the act of 1872 " shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts," &c.    U. S. St. June 9, 1874.    Coasting voyages (except as specified) would thus seem to be taken wholly out of the provisions of the act of 1872.    *Scott* v. *Rose*, 2 Lowell, 381. *United States* v. *Bain*, 5 Fed. Rep. 192.

Although the question has not been directly adjudged, seamen's wages have never been considered exempt from attachment by trustee process in this Commonwealth.    *Wentworth* v. *Whittemore*, 1 Mass. 471.    *Taber* v. *Nye*, 12 Pick. 105.    2 Dane Ab. 463.    See also *Potter* v. *Hall*, 3 Pick. 368; Rev. Sts. *c.* 90, § 24, and Commissioners' note; *c.* 109, § 4; Gen. Sts. *c.* 123, § 32; *c.* 142, § 21; Const. Mass. *c.* 6, art. 6.    And assignments by them of their wages have been recognized as valid.    *Crocker* v. *Whitney*, 10 Mass. 316, 319.

For these reasons, we are not prepared to hold that this attachment by trustee process was originally invalid.    But it is not necessary to express a definitive opinion on that point, nor on the question whether the attachment of a seaman's wages, in an action at common law against him and against the owners of the vessel as his trustees in foreign attachment, can deprive him of his right to enforce his lien upon the vessel by libel *in rem* in the admiralty.    See *The Bold Buccleugh*, 7 Moore P. C. 267; *Vandewater* v. *Mills*, 19 How. 82, 89; *Taylor* v. *Carryl*, 20 How.

583; *The Caroline*, 1 Lowell, 173; *Temple* v. *Turner*, 123 Mass. 125, 128; *McCarty* v. *City of New Bedford*, above cited.

The trustee in a process of foreign attachment can be charged only for a debt due from him to the principal defendant at the time of the attachment, and which remains justly due from the one to the other at the time of the judgment which determines whether the trustee shall or shall not be charged. The trustee, being a mere stakeholder summoned into a suit in which he has no personal interest, is entitled to the protection of the court under circumstances in which an ordinary defendant might be held liable.

In this spirit, it is now provided by statute, that if, after legal service of the process on the trustee, but before he has actual knowledge thereof, he in good faith makes any payment or becomes liable to a third person by reason of the goods, effects or credits in his hands, or delivers the same to the defendant or to any other person entitled thereto, he shall be allowed therefor in the same manner as if the payment or delivery had been made or the liability incurred before the service upon him; and that every trustee shall be allowed to retain or deduct, out of the goods, effects or credits in his hands, all demands against the defendant, of which if not summoned as trustee he could have availed himself, either by way of set-off on trial, or by set-off of judgments or executions, and shall be liable for the balance only, after all mutual demands between him and the defendant are adjusted. Each of these provisions does but affirm opinions expressed by this court before any such provision had been introduced into the statutes. Rev. Sts. *c.* 109, §§ 5, 36, and Commissioners' notes. Gen. Sts. *c.* 142, §§ 26, 28. *Williams* v. *Marston*, 3 Pick. 65, 67. *Hathaway* v. *Russell*, 16 Mass. 473, 476. *Boston Type Co.* v. *Mortimer*, 7 Pick. 166. *Smith* v. *Stearns*, 19 Pick. 20. If, after service of the process, a payment to the principal defendant is made in good faith by the trustee, the latter is protected, although the former takes it with the purpose of defeating the trustee process. *Thorne* v. *Matthews*, 5 Cush. 544. And if, pending the trustee process, the trustee obtains judgment against the defendant in an action brought after the service of the process for a sum due from the defendant to the trustee upon a contract made before its commencement,

the amount of that judgment, not only for the debt, but for costs, may be set off against the amount for which the trustee is chargeable. *Smith* v. *Stearns*, above cited.

The trustee is certainly entitled to no less protection when the state of accounts between him and the principal defendant has been changed by a compulsory payment, under the judgment of a court of competent jurisdiction, than when such a change has been procured by the voluntary act of the trustee.

In the case at bar, the trustee, being a common carrier by sea between Fall River and New York, has been compelled — by process issued against its vessel in New York from the federal court sitting in admiralty there and having jurisdiction of the *res* and of the persons libellant and claimant, and by the judgment of that court in favor of the libellant against the vessel, notwithstanding the disclosure of all the existing facts relating to the pendency of and the proceedings in this trustee process — to pay to the libellant the amount of his wages for which it is sought to be charged as his trustee in 'the present action; and for this reason, independently of all other questions in the case, should not now be compelled to pay the same sum a second time.

The previous opinions of this court contain, to say the least, nothing inconsistent with this conclusion. Each of the cases of *Wilkinson* v. *Hall*, 6 Gray, 568, *Whipple* v. *Robbins*, 97 Mass. 107, and *Wardle* v. *Briggs*, 131 Mass. 518, was decided upon the ground that the defendant, who set up a judgment rendered against him as trustee in foreign attachment in another State, had not made a full disclosure of the facts to the court which rendered that judgment. The opinions of Mr. Justice Thomas in *Wilkinson* v. *Hall*, of Chief Justice Parker in *Hull* v. *Blake*, 13 Mass. 153, 157, and of Chief Justice Shaw in *Meriam* v. *Rundlett*, 13 Pick. 511, 515, strongly imply that, if he had made such disclosure, the judgment would have protected him, because one who has paid the debt once, under the judgment of a tribunal having legal jurisdiction to decide, and adequate power over the person or property to compel obedience to its decisions, has an indisputable claim to protection, and cannot justly be compelled to pay it again. In *Whipple* v. *Robbins*, the court, referring to *Meriam* v. *Rundlett*, expressly reserved the expression of an opinion upon the question what effect should be given to the

payment under the judgment of the court of the other State, if the trustee had been compelled to pay there, notwithstanding a full disclosure of the facts, because that court had disregarded the pendency of the action here. And in *Garity* v. *Gigie*, 130 Mass. 184, the court, being satisfied that the process in another State, upon which the trustee had been charged and had paid there, had been served upon him before the like process in this Commonwealth, did not consider what would have been the effect of the judgment there if the service here had been the earlier.

The result is, that the judgment of the Superior Court discharging the trustee must be $\hspace{3cm}$ *Affirmed.*

*H. A. Clark*, for the plaintiff.

*A. J. Jennings*, (*J. M. Morton* with him,) for the trustee.