## ROSS *v.* BOURNE.

*(District Court, D. Massachusetts. January 19, 1883.)*

SEAMEN'S WAGES—RIGHTS TO SUE IN ADMIRALTY.

In the absence of express legislation on the subject by congress, the right of a seaman to sue in the admiralty *in personam* for his wages is not taken away or suspended by an attachment of his wages by trustee process in an action at law.

In Admiralty.

*C. T. Bonney* and *T. A. Codd*, for libelant.

*E. L. Barney*, for respondent and the attaching creditor.

NELSON, D. J. This is a libel *in personam* for seamen's wages. The libelant alleges that on the sixteenth of June, 1882, he shipped as boat-steerer in the whaling bark Helen and Mary, of New Bedford, of which the respondent is owner, then lying at Marble island, in Hudson's bay, in the prosecution of a whaling voyage, at the one

sixty-fifth lay in the subsequent catchings of the voyage; that the bark continued her voyage with the libelant on board, and took a large quantity of oil and bone, and finally returned home to New Bedford, where she arrived October 3, 1882, and the voyage then ended; that by his shipping agreement his lay was to be paid him at the termination of the voyage; and that he had demanded payment of his lay and it had been refused. The respondent, in his answer, admits the allegations of the libel, and avers that his only reason for not paying the libelant is that on the third of October, 1882, after the voyage had terminated and before the filing of this libel, the wages were attached by a trustee process against the libelant at the suit of Simeon Doane and another, returnable to the superior court for the county of Bristol on the first Monday of December, 1882, and that the trustee process has been entered in that court and is still pending. It is agreed that the amount due the libelant as wages is $132.12.

Section 61 of the shipping commissioners' act of June 7, 1872, (17 St. 276; Rev. St. § 4536,) enacts "that no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to any seaman or apprentice shall be valid in law, nothwithstanding any previous sale or assignment of such wages, or of any attachment, incumbrance, or arrestment thereon." This provision is general in its terms, and is applicable to all wages earned by seamen, whatever the nature of the voyage. But by the act of June 9, 1874, (18 St. 64,) it was enacted "that none of the provisions" of the act of June 7, 1872, "shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage." The effect of this act is undoubtedly to take fishing and whaling voyages, where the seamen receive as their compensation a share or lay in the catchings, wholly out of the operation of the act of 1872. This has been frequently so ruled in this district. It has also been so ruled as to coastwise voyages between ports on the Atlantic. *Scott* v. *Rose,* 2 Low. 381; *U. S.* v. *Bain,* 5 FED. REP. 192; *Eddy* v. *O'Hara,* 132 Mass. 56.

The question in the case, then, is whether, in the absence of express legislation on the subject by congress, the right of a mariner to sue

in the admiralty for his wages is taken away or suspended by an attachment of his wages by trustee process in an action at law.

The thirteenth admiralty rule provides that "in all suits for mariner's wages, the libelant may proceed against the ship, freight, and master, or against the ship and freight, or against the owner or the master alone, *in personam*." No one would for a moment contend that the attachment suit should have the effect to deprive the seaman of his lien on the vessel and freight. But to avail himself of that privilege he must necessarily resort to a court of admiralty, where alone the lien can be enforced. *The Caroline*, 1 Low. 173. In *Winthrop* v. *Carleton*, 8 Mass. 456, it was held that it was no cause to abate a writ that the defendant had been sued as the trustee of the plaintiff, and the trustee process was still pending, but was ground for a continuance only. The court say: "*Non constat* that judgment will be rendered against the defendant in the other suit." I shall not err if, following the decision in that case, I hold that the seaman's right to sue the owner *in personam* in the admiralty is not taken away by the trustee suit.

Is a court of admiralty under obligation to suspend its decree while the trustee suit is pending? The right of the seaman to sue in the admiralty for his wages is as old as the admiralty itself. Prior to 1872 there was no act of congress prohibiting the attachment of wages earned on foreign voyages, and it was for a period less than two years that the prohibition extended to coastwise and to fishing and whaling voyages. Yet the recent case of *McCarty* v. *The City of New Bedford*, 4 Fed. Rep. 818, decided by Judge Benedict, is the first reported instance of an attempt to delay a seaman in pursuit of his wages in the admiralty by an attachment by trustee process. In that case the learned judge held that seamen's wages were not attachable under the general maritime law, and he pronounced for the seaman, notwithstanding an attachment of the libelant's wages by trustee process was pending in a state court. That such a debt is not exempt from attachment at common law seems to be the law of Massachusetts, though the point has never been directly adjudged. *Wentworth* v. *Whittemore*, 1 Mass. 471; *Taber* v. *Nye*, 12 Pick. 105; *Eddy* v. *O'Hara, ubi supra;* 2 Dane, Abr. 463; Cush. Trust. Proc. 38. At least it would seem to be clear that a judgment of a court of competent jurisdiction charging the trustee, and a payment by him under the judgment, would be a defense *pro tanto* in a court of admiralty, as in any other court, to a suit by a seaman for his wages, whether against the ship and freight, or the owner or master *in personam*. But it is a very

different question whether the admiralty court is bound to withhold its decree until the trustee suit is disposed of. By the trustee statute of Massachusetts, if during the pendency of an action the defendant is summoned as the trustee of the plaintiff, it is wholly within the discretion of the court to permit the action to be stayed for the trustee suit, and the court can order judgment in the first suit or continue it, as it sees fit. Pub. St. c. 183, § 40.

We have seen that the pendency of the suit is no ground for abatement, (*Winthrop* v. *Carleton ;*) and in *Merriam* v. *Rundlett*, 13 Pick. 511, it was decided that a judgment against one as garnishee in a process of foreign attachment in another state is not a bar to an action against him in this state by the principal defendant, if the garnishee has not satisfied and may not be obliged to satisfy the judgment, but that it was good ground for a stay of proceedings only.

In *Stanton* v. *Embrey*, 93 U. S. 548, the pendency of a prior suit in a state court was held not to abate a suit in a federal court between the same parties for the same cause of action; and in Massachusetts a prior action for the same cause in another state is not ground for abatement. *Newell* v. *Newton*, 10 Pick. 470; *Merrill* v. *New England Ins. Co.* 103 Mass. 245.

In *Merriam* v. *Rundlett* it is said by Chief Justice SHAW that "it has been well settled in this commonwealth that a judgment against a garnishee in another state, when the court has jurisdiction of the person and of the subject-matter, will protect one here who has been obliged to pay or is compellable to pay in pursuance of such judgment, although it be a debt due on a promissory note or other negotiable security, although no such judgment would have been rendered against a garnishee or trustee under our laws, and although such law appears to us a little unreasonable."

In *Eddy* v. *O'Hara* it was adjudged that where the wages of a seaman had been attached by trustee process in a court of this state, and the trustee had afterwards been compelled by proceedings in a court of admiralty against the vessel to pay the attached wages to the defendant, notwithstanding his disclosure in the admiralty suit of the pendency of the trustee process, the trustee should be discharged, and should not be compelled to pay the same sum a second time. Under these decisions the respondent can suffer no detriment in the trustee suit from a decree rendered against him here.

It was held by Judge LOWELL, when district judge, in *The Sarah J. Weed*, 2 Low. 555, dissenting upon most satisfactory grounds from a contrary decision of Judge CONKLIN, in *The A. D. Patchen*, 21 Law

Rep. 21, that the lien of a seaman passed by an assignment of his wages. This decision of Judge LOWELL has been repeatedly followed here, and is undoubtedly the law of this circuit. Judgment against the trustee might therefore have the effect to transfer to the attaching creditor, by way of subrogation, the seaman's lien on the ship and freight. Such complications ought not to be permitted in suits for seamen's wages. The seaman should have his wages settled promptly. If the owner or master does not pay him, a court of admiralty should afford him a simple, speedy, and inexpensive remedy. The necessities of his occupation, his want of friends and means, and the small sums usually coming to him, would, in most cases, render him incapable of following his claim through the double proceeding, and compel him to abandon it altogether. This would furnish an inducement to dishonest owners and masters to instigate or encourage the bringing of trustee suits to defraud the seamen.

I am aware of no law of congress, or rule or practice in admiralty, which requires this court to hang up its decree in this case until the attachment suit is disposed of. Ordinarily the sailor's only means of subsistence on shore are his wages earned at sea. If these may be stopped by an attachment suit the instant his ship is moored to the wharf, a new hardship is added to a vocation already subject to its full share of the ills of life. Wages earned amidst the perils and hardships of the whale fisheries, and payable only at the end of a voyage usually lasting for years, should of all others be paid promptly when due.

So far as I have any discretion, I shall decline to exercise it to prevent the libelant from recovering his wages.

Decree for the libelant for $132.12.