## THE CITY OF NEW BEDFORD.

*(District Court, S. D. New York. April 2, 1884.)*

1. SEAMEN'S WAGES NOT ATTACHABLE—JURISDICTION—COMITY OF COURTS—LOCAL LAW—FOREIGN JUDGMENTS—U. S. CONST. ART. 4, § 1.

Whether seamen's wages are subject to garnishee process in suits at common law in state courts has not been settled by the supreme court, and in this district they have been held not liable to attachment. The contrary view seems to be held in the First circuit. *Held, therefore,* that the latter should be regarded as fixing the maritime law for the time being within that circuit, and that the state court in attaching such wages should be held by comity to be acting within its jurisdiction under the local maritime law as there recognized. *Held, therefore,* that a compulsory payment under a judgment on garnishee process in the state court of Massachusetts made by the defendant prior to his answer in this cause, should be deemed valid by comity, as well as under the United States constitution, and allowed the defendant in this suit as a credit against the libelant's claim.

2. SAME—OFFSET.

A court of admiralty acts upon equitable principles, and upon that ground also should allow as an offset the compulsory payment of a just debt of which the libelant has had the benefit, where no special hardship to the libelant would result.

In Admiralty. Action for Seaman's Wages.

The libelant was a seaman on the propeller, the City of New Bedford, running between Fall River, Massachusetts, and New York. The parties agree that the sum of $32.67 was due to the libelant for wages for

his services up to the evening of November 5, 1883, when he was discharged. The propeller was owned by the Old Colony Fall River Steamboat Company, a Massachusetts corporation. Payments were ordinarily made on the eighth or ninth of each month, on the arrival of the "pay-car." On November 9th, the pay-car having arrived, the libelant called on Mr. Ackley, the agent of the claimants, and asked for his pay, and was told to call again shortly, when the agent would be ready to pay him. An hour or two afterwards he called again for his pay, and was informed that his wages had been attached by a trustee or garnishee process, served upon Mr. Ackley, at the suit of one Blake. This process had been issued in accordance with the usual course of procedure in the courts of Massachusetts, and was returnable on November 25th. The process did not state the amount of the debt claimed by Blake against the libelant, but attached as security for the payment of whatever might be recovered, not exceeding $300, any moneys, effects, and credits of the libelant in the hands of the company. The libelant thereupon went to Blake for the purpose of procuring a settlement with him, but did not effect any settlement. The libelant and Blake are both residents of Fall River. The libelant was not served personally with the process. He subsequently came to this city and filed his libel in this cause for the recovery of his full wages; and caused the propeller to be seized by the marshal on November 12th. By diligent efforts the propeller was released, under bonds, in time to leave this city upon her usual trip the same day. On the twenty-fifth of November the claimants here, by the answer interposed in the suit against the libelant in Massachusetts, duly set up the facts in regard to the wages due to the libelant; that they were for his services, as a seaman upon the propeller, in running from Fall River to New York; that the wages had been demanded, and that they were exempt from attachment. The court, however, overruled the claim of exemption set up in the answer, and gave judgment for $8.25, the amount of Blake's claim, which the claimants here subsequently paid to the sheriff on November 30, 1883, upon execution issued upon that judgment, together with 70 cents additional costs.

The claimants in their answer in this cause set up the above facts, and paid into court the balance of the wages due to the libelant at the time of filing their answer. Upon the trial, the above facts were admitted. The only questions submitted to this court are—*First*, whether the sum of $8.95 shall be allowed as a credit to the claimants in this action; *second*, the question of costs.

*Hyland & Zabriskie*, for libelant.

*Shipman, Barlow, Larocque & Choate*, for claimants.

BROWN, J. In the case of *McCarty* v. *The City of New Bedford*, 4 FED. REP. 818, it was held in this court, (BENEDICT, J.,) that an attachment suit pending in Massachusetts on appeal after judgment, wherein the seaman's wages had been attached, was not a valid plea

to the libel in this court for the same wages, but that the libelant should have judgment for the whole wages due him. That decision is sustained by such weighty and varied considerations as seem to me to justify the conclusion of the court in that case, that seamen's wages under the maritime law ought to be held exempt from attachment on trustee process in suits at common law. That case differs from this in the fact only that in the present case the defendant has been compelled to pay, and has paid, the amount adjudicated in the attachment suit; while in the other case the amount, though adjudicated, had not been paid, the cause being then pending on appeal. In the decision on the appeal in that case, (*Eddy* v. *O'Hara*, 132 Mass. 56,) the supreme court of Massachusetts in an elaborate opinion, delivered by GRAY, C. J., who examined the subject with his usual ability and research, arrived at the opposite conclusion, and held the attachment proceedings valid. In rendering judgment, however, that court relieved the steam-ship company from the effect of the judgment; it appearing that, in the mean time, under the judgment of this court as a court of competent jurisdiction over the subject-matter, the trustee had been compelled to pay the whole amount of the seaman's wages. This was done upon the ground that an innocent stakeholder should not be compelled to pay twice under the diverse adjudications of different courts of competent jurisdiction. The validity of such attachment proceedings against the wages of seamen engaged in the coastwise trade was again directly affirmed in the case of *White* v. *Dunn*, 134 Mass. 271.

In the case of *Ross* v. *Bourne*, 14 FED. REP. 858, the United States district court of Massachuestts, (NELSON J.,) held, as was held by BENEDICT J., in the case of *McCarty* v. *The City of New Bedford, supra*, that the pendency of a suit at law againt a seaman, wherein his wages had been attached by trustee process, but not yet paid, should not bar the seaman's recovery of his whole wages in his suit in admiralty. This was based partly on the grounds stated by BENEDICT, J., and partly on the ground that under the decision in *Eddy* v. *O'Hara*, the respondent could suffer no detriment in the trustee suit from any decree first rendered against him in admiralty for the full amount. The last ground could apply only to those cases in which payment had not been previously made by the garnishee. In his opinion in that case, NELSON, J., says:

"That such a debt (for seaman's wages) is not exempt from attachment at common law seems to be the law of Massachusetts, though the point has never been directly adjudged. At least, it would seem to be clear that a judgment of a court of competent jurisdiction charging the trustee, and a payment by him under the judgment, would be a defense, *pro tanto*, in a court of admiralty, as in any other court, to a suit by a seaman for his wages, whether against the ship and freight, or the owner and master *in personam*."

Since this decision the case of *White* v. *Dunn, supra*, has been decided in the supreme court of Massachusetts, in which the liability

for such wages in an action at common law has been directly adjudicated. On appeal to the circuit court the case of *Ross* v. *Bourne* was affirmed by LOWELL, J. 17 FED. REP. 703. In his brief opinion, LOWELL, J., states that he "does not dissent" from the learned opinion of Mr. Justice GRAY in the case of *Eddy* v. *O'Hara, supra,* but he held that attachment proceedings in another jurisdiction, though valid, should be respected out of comity only, (see *Lynch* v. *Hartford Ins. Co.* 17 FED. REP. 627;) and that comity does not require summary actions in favor of seamen in admiralty to be hung up to await the dilatory proceedings in an attachment suit at common law.

On the part of the libelant, it is urged that this court, in adhering to the view previously expressed in the case of *McCarty* v. *The City of New Bedford,* must hold that the attachment proceeding in Massachusetts was utterly void; that as there was no service of process upon the libelant, the proceeding was, essentially, a proceeding *in rem* against the fund attached; and as, according to the view of this court, the fund was not subject to attachment, the whole proceeding, from the time the trustee's answer was admitted, showing the facts, was *coram non judice* and void. This would doubtless be the legal result of the view of the proceeding entertained in this court, if the attachment proceedings, or the fund attached, had been within the territorial jurisdiction of this court, and no question of comity were involved. If, for instance, property which was by law exempt, such as the last cow of the defendant, or wages due, being less than $10, which by the Massachusetts statute are expressly exempt, were attached, and the facts showing such exemption were made to appear in the trustee's answer, and admitted, any judgment which the court might thereafter give in the absence of personal service of process on the principal defendant, and any sale or payment under such a judgment, would be held utterly void, in a court of law, for want of jurisdiction of the subject-matter. Whart. Confl. Laws, §§ 664, 717; *Thompson* v. *Whitman,* 18 Wall. 457; *Pennoyer* v. *Neff,* 95 U. S. 714; *St. Clair* v. *Cox,* 106 U. S. 350; S. C. 1 Sup. Ct. Rep. 354; *Daily* v. *Doe,* 3 FED. REP. 903; *The B. F. Woolsey,* Id. 457; 4 FED. REP. 552. But, even in that case, it does not follow that a court of admiralty, though sitting within the same territorial jurisdiction with the court rendering such a judgment, would necessarily disregard what had been done under it, and compel a defendant to pay a second time, without reference to any of the other circumstances of the case. A court of admiralty acts upon equitable principles. A libelant cannot demand of the court an application of even its own general rules beyond what, in the particular case, he is entitled to *ex æquo et bono.* Here there is no fault or laches in the respondents. They stated all the facts properly and promptly in their answer in the attachment suit. The libelant had full actual notice of the suit on the day when it was instituted, though not legally served with process. The debt was for necessaries supplied to the libelant at his

home in Massachusetts, and its justice is not disputed. Instead of assuming the defense of that suit, if he had any defense, he left the trustee to defend as he could, came within this jurisdiction, and attached the defendants' vessel; and after they have been compelled to pay, under the execution in the attachment suit, about one-quarter of the wages due, he asks this court to require the defendants to pay that part over again.

This court ought not to disregard accomplished facts or the equities which grow out of them. It may disregard assignments of wages by seamen, or even judgments, so long as they are executory merely. But here the payment by the defendants has been already made, and made compulsorily under a power which they could not resist. The libelant's debt to Blake has been thereby extinguished. The debt was a just one. No circumstances appear or are suggested showing that it was not one which the libelant was bound in conscience to pay, and one which he would presumably have paid out of these wages, if received by him. He has had the full benefit of the defendants' payment of it. These are all accomplished facts; and in the absence of any proved circumstances of hardship to the libelant, there is manifestly no equity in his claim to be paid, in substance, a second time; and such a decree would inflict a manifest wrong upon the defendants. From this point of view the court might determine quite otherwise if there were any fraud, injustice, or oppression, either in the inception or in the payment of the debt to Blake; or, if it absorbed the whole of the libelant's wages, or so much of it as would distress him to do without. But there is no suggestion of any such circumstances. Without reference, therefore, to the result, in a strictly legal point of view, of the assumed want of jurisdiction in the Massachusetts court to attach those wages, I think a court of admiralty, acting on equitable principles, could not award the libelant, under such circumstances, *ex æquo et bono*, the wages already paid compulsorily for his use. The defendant has manifestly the better equity. Per KENT, C. J., in *Embree* v. *Hanna*, 5 Johns. 101–103.

Another consideration leads to the same result; namely, the law of the place of the attachment proceedings, including both the residence of the parties and the *situs* of the debt attached. In both the United States district and circuit courts of Massachusetts, the tribunals there specially charged with the determination of questions of maritime law, it must be considered, since the expression of opinion by LOWELL, J., in the case of *Ross* v. *Bourne, supra*, that, under the maritime law as received and applied in Massachusetts, the wages of seamen may be there attached; in other words, that the state court had jurisdiction of the subject-matter, and was therefore a competent court to compel the payment made by the respondents in the attachment suit. The question before us, it is true, was not presented for express adjudication, but it was involved collaterally; and the expression of opinion, in regard to it, in both the United States courts in Massachu-

setts, is sufficient to entitle the respondents here to the benefit of the views of the United States courts there, as a recognition of the right to attach the wages of seamen in the coastwise trade in that district, according to the maritime law as there recognized. The maritime law of the United States ought, indeed, to be uniform throughout the country; but, until the supreme court decide between different views in the United States courts in the different districts, this court ought, upon the principles of comity, to respect the views of maritime law held and applied in other districts, though opposite to its own, so far, at least, as regards acts done and payments compusorily made within those districts in conformity with the maritime law as there recognized by the United States courts. Story, Confl. Laws, § 331. Even in cases of a difference of view with the state courts, the supreme court, in the recent case of *Burgess* v. *Seligman,* 107 U. S. 20, 34; S. C. 2 Sup. Ct. Rep. 10, observes:

"But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts."

These observations are certainly quite as applicable to differences between the United States courts themselves in different districts as to the local maritime law, and as to the legality of acts done in conformity with such local law. See *Roderigas* v. *East River Sav. Inst.* 63 N. Y. 460; *Lavin* v. *Emigrant Industrial, etc.,* 1 FED. REP. 641.

The constitution of the United States, moreover, requires that "full faith and credit be given in each state to the judicial proceedings of every other state." Article 4, § 1. In the case of *Mills* v. *Duryee,* 7 Cranch, 481, 484, STORY, J., in delivering the opinion of the court, says: "It remains only, then, to inquire in every case what is the effect of a judgment in the state where it is rendered?" and this test is reaffirmed in the case of *Green* v. *Van Buskirk,* 7 Wall. 139, 148. See *Pennoyer* v. *Neff, supra; Pritchard* v. *Norton,* 106 U. S. 124; S. C. 1 Sup. Ct. Rep. 102. Since the decision of *Ross* v. *Bourne, supra,* which was prior to the attachment proceedings and the payment by the respondents in this case, there can be no question, I think, that under the maritime law, as recognized and enforced in United States courts in the state of Massachusetts, the judgment record in the attachment suit put in evidence in this case, showing the attachment and the payment under it, would be held valid and binding upon the libelant in Massachusetts, because in conformity with the maritime law as there recognized; and being valid and effectual there, they must be held to be valid and effectual in any other jurisdiction where they may be brought in question, until the supreme court shall otherwise adjudge, as respects the validity of such attachments.

It follows, therefore, that the payment made must be allowed, and that the tender made at the time the answer was filed was sufficient. The libelant is entitled to the sum deposited in court, with costs to that time only, and the defendants should have costs thereafter.