# W. H. HOLLAND *v.* STEAMSHIP "HELENE", WILDER STEAMSHIP COMPANY, intervenor.

## DECIDED: JULY 26, 1902.

1. By the Act of February 18, 1895, Vol. 28, U. S. Stats. at Large, p. 667, the provisions of Section 4536, R. S. U. S., which exempt the wages due or accruing to any seaman "from attachment or arrestment in any court," are made applicable to all seamen engaged in the "coastwise trade" who ship before a United States Shipping Commissioner.
2. In an action brought by the engineer of the steamship Helene, admitted to be a vessel engaged in the "coastwise trade," which action is based on Section 4546 of the R. S. U. S., and where it appeared that in an action before the District Magistrate of Honolulu, a judgment was rendered against libellant, and his wages in the hands of the Wilder Steamship Company had been garnisheed, which company had thereupon refused to pay libellant the same; and it being shown that libellant had signed before a Shipping Commissioner at San Francisco, when entering the service of the Wilder Steamship Company;

   *Held,* that under the provisions of the Act of February 18, 1895, Vol. 28, U. S. Stats. at Large, p. 667, the wages of said libellant were exempt from garnishment, and the Wilder Steamship Company ordered to pay to the libellant the wages sued for.
3. The wages of libellant are further exempt from garnishment under the provisions of Section 8 of an Act of the Legislature of the Territory of Hawaii, entitled "An Act to provide for the exemption of certain personal property from attachment, execution, distress and forced sale of every description......" passed April 24, 1901; it being admitted that he is the head of a family, earning less than $200 a month.

IN ADMIRALTY. PROCEEDING UNDER SECTION 4546 R. S. U. S.

*T. I. Dillon,* proctor for complaint.

*Kinney, Ballou & McClanahan,* proctors for intervenor.

ESTEE, J. This is a proceeding under Section 4546 of the Revised Statutes of the United States which provides as follows:

"Whenever the wages of any seaman are not paid within ten days after the time when the same ought to be paid according to the provisions of this Title, or any dispute arises between the

master and seamen touching wages, the district judge for the judicial district where the vessel is,...........may summon the master of such vessel to appear before him to show cause why process should not issue against such vessel, her tackle, apparel, and furniture according to the course of admiralty courts, to answer for the wages."

The complainant in this case is the engineer of the steamship "Helene" belonging to the Wilder Steamship Company and plying between the Islands of the Hawaiian group.

The complainant as such engineer is in receipt of a monthly salary of sixty dollars; during his absence on one of his interisland trips, on to-wit: the 28th day of June, 1902, one Yee En Kee, commenced an action at law against him before the Hon. Lyle A. Dickey, District Magistrate of Honolulu, for an alleged indebtedness claimed to be due from complainant to him in the sum of $46.10; and in said action, a garnishment was issued against the Wilder Steamship Company, garnishing the wages of the plaintiff in its hands. There was due from the Wilder Steamship Company to the plaintiff on the first day of July, 1902, the sum of sixty dollars, which was one month's wages.

On the 7th day of July, 1902, a judgment was rendered against the Wilder Steamship Company as said garnishee in the sum of $46.10 which said judgment still remains unpaid. The Wilder Steamship Company upon demand of plaintiff refused to pay him his wages for the month of June, when the same came due, considering itself bound not to do so under said garnishment proceedings.

Whereupon the plaintiff applied to this court within the statutory time, under the provisions of Section 4546 of the Revised Statutes above referred to, for an order to show cause directed to the captain of the said steamship,"Helene," why process should not issue, for the payment of said wages; said plaintiff further relying upon the provisions of Section 4536 of the Revised Statutes of the United States relative to the exemption of seamen's wages from attachment or arrestment by the order of any court. An order to show cause was issued out of this Court directed to the master of the said steamship "Helene," one

Donald F. Nicholson, and to said vessel, in accordance with the provisions of Section 4546 aforesaid.

Thereupon the Wilder Steamship Company filed an intervention in the said proceedings admitting all of the facts above stated, and alleging that the wages claimed to be due claimant were due from it, and setting up as a reason for its refusal to pay the same, the garnishment and judgment of the District Magistrate; but at the same time depositing with the clerk of this court the sum of sixty dollars, the amount of wages claimed to be due said libellant and submitting the whole question to the jurisdiction of this court.

It was further admitted that the complainant is the head of a family, earning wages less than $200 a month. The facts appear to be admitted. The question resolves itself into one of law alone. Were libellant's wages subject to garnishment?

Whatever may have been the inferences to be drawn from those provisions of the early Act of Congress passed July 20, 1790, and known as an Act for the "government and regulation of seamen in the merchant service", and now embodied in Sections 4530, 4546 and 4547 of the Revised Statutes, as to the exemption of seamen's wages from garnishment or attachment, it is clear that there was no exact statutory expression upon this subject until the passage of the so-called Shipping Commissioner's Act on June 7, 1872, (Sections 4501-4612 R. S. U. S.); Section 4536 being the special provision made for this exemption in the following terms:

"No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law notwithstanding any previous sale or assignment of wages, or of any attachment, incumbrance or arrestment thereon . . . . . . . . . ."

The point was raised in this proceeding that the complainant was barred from the benefits of Section 4536 by an Act of Congress of June 7, 1874, wherein it was provided that none of the provisions of the Act relating to Shipping Commissioners "shall apply to sail or steam vessels in the coastwise trade, except the

coastwise trade between the Atlantic and Pacific Coasts......"

I do not deem it necessary to pass upon the question of what constitutes the coastwise trade of the United States, as it is admitted for the purposes of this case, and the questions involved that the steam vessels of the Wilder Steamship Company, including the steamship "Helene," are American vessels engaged in the coastwise trade. It would seem from an examination of the Act of 1874, that the provisions of Section 4536 do not apply to sail or steam vessels engaged in the coastwise trade, although the decisions on this point are widely conflicting. In a very well considered and exhaustive opinion rendered by Judge Benedict, in the case of *McCarty v. The Steam Propeller City of New Bedford*, reported in 4th Fed. 818, in which he goes over the entire field concerning the question of sailors' wages being exempt from execution, the learned judge takes the ground that the Act of Congress of 1874 was not intended to change the terms of Section 4536; that it had been the well established history of the admiralty to recognize this exemption of wages and that Section 4536 was simply declaratory of a long existing law, and that it was not reasonable to recognize a distinction as between one class of seaman and another class. While I am inclined to give my assent to the general reasoning of that opinion both on this point and on the other questions involved in that case, yet in view of the decision of the Supreme Court of the United States in the case of the *United States v. The Grace Lothrop*, (95 U. S. Page 527-532) holding that by the Act of 1874, Congress intended to declare that the original Act of 1872 should not apply to vessels engaged in the coastwise trade, other than the trade between the Atlantic and Pacific Coasts, and also in view of the later Acts of Congress amendatory of and supplementary to, the Shipping Commissioners' Act, I am forced to the conclusion that the Act of 1874, standing alone, might defeat a proceeding of this character in the event the complainant was employed on a vessel engaged in the coastwise trade. However, there have been several important amendments to the Shipping Commissioners' Act since the Act of 1874, which shed a different light upon it.

In order to understand these amendments it must be remembered that under the Act of 1872, shipping articles were to be made in writing or in print with every seaman before proceeding on the voyage, and where the voyage was to be a foreign one (other than one between the United States and the British North American possessions or the West Indies or the Republic of Mexico), or was to be from a port of the Atlantic to a port of the Pacific or *vice versa*, in a vessel of a burden of seventy-five tons or upward, these shipping articles must be signed in the presence of a shipping commissioner, unless there is no shipping commissioner at the port, in which event the collector of customs or his deputy may conduct the business of such commissioner (Section 4511 R. S.). While it was provided by Section 4513 R. S. U. S., that the terms of Section 4511 "shall not apply to..........masters of coastwise..........vessels."

In the Act of June 19, 1886 (Vol. 24, P. 79-80 U. S. Stats.) this law was amended in relation to the shipping of seamen for any vessel engaged in the coastwise trade or the trade between the United States and Canada, or Newfoundland, the West Indies and the Republic of Mexico, by permitting the shipping commissioners to "ship and discharge such crews at the request of the master or owner of the vessel.........."

Again on August 19, 1890, (Vol. 26 P. 320 U. S. Stats.) it was further provided (contemplating the possibility of crews of vessels engaged in the coastwise trade other than foreign, as specified in the Act of 1886, being shipped before the shipping commissioner), that certain provisions of the Revised Statutes should be extended to such vessels.

And again in the Act of February 18, 1895 (Vol. 28, Page 667 U. S. Stats.) it is finally provided that—

"When a crew is shipped by a shipping commissioner for any American vessel in the coastwise trade..........such seamen shall be discharged and receive their wages as provided by the first clause of Section 4529 and also by Sections 4536........ of the Revised Statutes........but in all other respects such shipment of seamen and such shipping agreement shall be regarded as if both shipment and agreement had been entered into

between the master of the vessl and a seaman without going before a shipping commissioner."

It seems to be clear that in addition to the extension of the other provisions of the Revised Statutes enumerated in said Act, it was the intention of Congress to remove the limitations arising through the Act of 1874, in relation to the exemptions of seamen's wages in the coastwise trade, from all seamen shipping on vessels engaged in that trade, who shipped before a shipping commissioner.

It is admitted that the contract signed by complainant when entering the service of the Wilder Steamship Company was so signed before a shipping commissioner at San Francisco.

Seamen's wages have been, at all times guarded by the laws of all civilized countries, until, as was well said by Mr. Justice Ware, the protection of seamen's wages has become 'the common law of the sea." And while a few cases are found in the books where attempts have been made as in this case, to garnishee the wages of sailors by inferior local law courts, yet so far as I can find in no single instance have the attempts succeeded.

It is indeed a part of international law to protect sailors' wages. This has been done as a matter of public policy. Their duties are fraught with danger, their home is upon the sea. They are mere children when upon land in all matters of business. So much is this recognized, that it has become the settled law that an express agreement on the part of a seaman to waive his lien for wages on the ship cannot be enforced.

"Admiralty courts will withhold their sanction from any such agreements, not only upon equitable considerations growing out of the improvidence and want of intelligence of seamen in their bargains, but also upon considerations of public policy." *The Sarah Jane B. & H.*, 414. *Taylor et al. v. Carryl*, 20 How. 503, 601. *McCarty v. Steam Propeller City of Bedford* 4 Federal, 818, 827.

While it appears that in this case a judgment was obtained against the Wilder's Steamship Company, intervenor herein, in the action before the District Magistrate of Honolulu, and which

judgment still remains unpaid, yet "Courts of law cannot undertake by garnishment to settle the equities between the parties in order to subject an equitable demand which the defendant may have against the garnishee to the payment of the defendant's debt." Drake on Attachments, 457. *Ross v. Bourne,* 14 Fed. 858-861, *Bourne v. Ross,* 17 Fed. 703.

As was said by Chief Justice Taney in his dissenting opinion in the case of *Taylor et al. v. Carryl,* 20 How. 601:

"The seamen, as a matter of right, are entitled to process of the court to enforce payment promptly in order that they may not be left penniless and without means of support, and the right to this remedy is as well and firmly established as the right to a permanent lien. No court of common law can enforce or displace this lien. It has no jurisdiction over it nor any right to obstruct or interfere with the lien or the remedy which is given to the seamen.". . . . . . . . . . . .I do not understand these propositions to be disputed."

Furthermore, there is a territorial statute which exempts the wages of complainant from attachment, execution or distress. It is provided by Section 8 of "An Act to provide for the exemption of certain personal property from attachment, execution, distress and forced sale of every nature and description . . . . . . . . . ., passed by the legislature of the Territory of Hawaii on April 24, 1901, (¹) that among said personal property so exempt, shall be "the wages of every laborer or person working for wages, such person being the head of a family, to the amount of $200 . . . . . . . ." The complainant would come under this category.

It is therefore clear to the court that it is not only safe in cases of this character for all American merchant ships when reaching the port of destination to pay all sailor's wages then due, but that it is the ship's duty to do so and that the payment of the sailor under the forms of law is the settlement of the claim and thus relieves the ship.

It is ordered that claimant be paid by the Wilder Steamship Company, the sum of sixty dollars, his wages for the month of June, 1902, together with his costs of this proceeding.

It is further ordered that the sixty dollars on deposit with the clerk of this court be used for that purpose so far as it will go, which sixty dollars together with said costs shall constitute the full amount due the libellant in this proceeding.

And that the wages of this libellant are exempt from garnishment, levy or attachment.

(1) See *Act 9, Page 11*, Session Laws 1901.