WILLIAM FITZSIMMONS *v.* EDWARD BAXTER AND THE OWNERS OF THE SHIP ANN GRAY.

A seaman cannot maintain an action against both the master and the owner of a vessel for his wages. He has his remedy against either the master or the owner, but he cannot sue both.

The plaintiff shipped on board of a vessel, as seaman, at Genoa, and by the shipping articles agreed "to be obedient to the lawful commands of the master or of any person who shall lawfully succeed him." Before the completion of the voyage, the master left the vessel, and was succeeded by the mate, who took command as master, and completed the voyage: *Held*, that the mate, as substituted master, was answerable to the plaintiff for his wages earned during the voyage. The substituted master in assuming the command of the vessel and the completion of the voyage, acquires, in that capacity, all the power and authority which the former master had over the seamen by virtue of their contract, and he must necessarily take with it all the onerous obligations which the maritime law imposes as a consequence of the contract made with the seamen.

Desertion, to be an answer to a seaman's claim for wages, must be a voluntary act on his part, and not induced by an act of the captain, which would make the dissolution of the contract by the seaman necessary and justifiable.

An action upon a contract, cannot be maintained in the Marine Court of the city of New York, against the owners of a vessel by that generic title alone. Their names as defendants must appear, so that judgment may pass against them.

The provisions of the Revised Statutes (vol. II, p. 347) providing that a defendant, if his name is unknown, may be sued by a fictitious name, do not apply to the Marine Court, nor can the Court of Common Pleas, under the power of amendment given by the Code, remedy such a defect.

The Court of Common Pleas cannot, upon appeal from a Justice's judgment, consider affidavits submitted for the purpose of contradicting the Justice's return. The court is governed by the return, and if it is untrue, the remedy is by action against the Justice for a false return.

Where the amount of the recovery was less than $50, and the Justice, before whom the case was tried, in the Marine Court, gave an allowance of $25: *Held*, on appeal that the allowance was in the discretion of the court below.

APPEAL by the defendant, Baxter, from a judgment of the general term of the Marine Court, affirming a judgment of that court at trial term.

The action was brought against the defendant, Baxter, "and owners of ship Ann Gray," for seaman's wages. The plaintiff shipped on board the "Ann Gray" at Genoa, Italy, for a voyage, which had not terminated at the time the action was brought. By the shipping articles, the plaintiff agreed "to be obedient to the lawful commands of the master or of any person who shall lawfully succeed him." William Griffiths was the master of the vessel under whom the plaintiff shipped, but left the ship at Leghorn, and the defendant Baxter, who had been the mate, took command, and brought the vessel to New York. While the vessel was in the port of New York, the defendant presented a pistol to the plaintiff's head, and threatened to shoot him; five minutes afterwards the captain shot the boatswain, and seventeen days thereafter, the plaintiff, up to that time having performed all his duties, left the vessel, being afraid of his life.

The defendant's counsel moved to dismiss the complaint. The motion was denied, and judgment rendered for the plaintiff, which was affirmed by the General Term of the Marine Court.

The defendant, Baxter, appealed to this court.

*Charles Edwards*, for appellant.

I. The defendant Baxter, is not liable in this action. Although a seaman has three remedies; *i. e.*, against master and against owner, and against ship, yet his remedy against the master is only where *he, himself* (the master), personally contracts. ' The law is settled, especially in this State, that a mere mate who happens during the voyage to have to take the place of the master with whom the contract is made, is not liable to a seaman ( *Wysham* v. *Rossen*, 11 Johns. 72). Nothing outside of the shipping articles can be received. They become the sole evidence of contract (Abbott, p. 616 ; *U. S.* v. *Hamilton*, 1 Mason's Rep. 443). No man is liable to another unless he has made a contract with him. There is no contract at Leghorn, or elsewhere, between Baxter and plaintiff. The only contract is in the articles with Captain Griffiths, and where Baxter merely appears as mate. A master is answerable on his own contract only (Abbott, 157; *The Favorite*, 2 C. Rob. 232). See note to *Atkins* v. *Burrows*, 1 Peters' Adm. 247.

II. The action is bad on its face, as it goes against Edward Baxter individually, and also against the owners of ship Ann Gray (*Peabody* v. *Washington Ins. Co.*, 20 Barb. 342 ; *Gregory* v. *Oaksmith*, 12 How. Pr. 134; *Voorhees* v. *Baxter*, 1 Abb. Pr. 44 ; *Pinckney* v. *Wallace*, *Ib.* 82 ; *Priestly* v. *Ferine*, 3 Hurlst. & C. 979 ; *McCabe* v. *Doe*, 2 E. D. Smith, 64).

*James Ridgway*, for respondent.

I. A new or substituted master assumes the maritime contract, and becomes liable for wages of the seamen when he takes upon himself the original voyage (Flanders on Shipping, §§ 330, 331, 332, 333 ; *Bray* v. *Ship Atlanta*, Bees' R. 48 ; *Farrel* v. *McClea*, 1 Dall. 392 ; *Wysham* v. *Rossen*, 11 Johns. 72). Besides, there was a special contract between the plaintiff and defendant in the shipping articles, whereby the crew agreed to serve not only under Griffiths, but also under any master who might succeed him, and the name of the defendant was signed by him to the contract, at the time the plaintiff

signed and shipped, the defendant thereby contracted with the plaintiff.

II. Cruel or oppressive treatment, or a justifiable apprehension of bodily harm, amounts to an unlawful discharge, and termination of the voyage, and entitles the seaman to recover wages (*The America*, Blatch. & How. R. 185; *U. S.* v. *Hamilton*, 1 Mason, 446; *Sherwood* v. *McIntosh*, Adm. Dist. Ct. of Maine; *Sheppard* v. *Taylor*, 5 Peters' R. 687; *Limland* v. *Stephens*, 3 Esp. 269; *U. S.* v. *Cassedy*, 2 Sumner, 583; *U. S.* v. *Haines*, 5 Mason, 272).

By THE COURT.—DALY, F. J.—There are two objections to the joinder of the owners of the ship and the master in an action for seamen's wages. I. No action upon a contract can be maintained in the Marine Court against the owners of a vessel by that generic title alone. Their names as defendants must appear, that judgment may pass against them. By the *Revised Statutes*, vol. II, p. 347, a defendant, if his name is unknown, may be sued by a fictitious name; but the provision does not apply to the Marine Court; nor can this court, under the power of amendment given by the code, remedy such a defect (*McCabe* v. *Doe*, 2 E. D. Smith, 69). II. A seaman cannot maintain an action against both the master and the owner for his wages. He has his remedy against either; but he cannot sue both. If he brings an action against the master, he treats him as the principal, being the one with whom the contract was made; and if he sues the owner, making him the principal, he does so upon the implied authority which the master had to contract upon the owner's behalf. This was held to be the law in *Priestly* v. *Ferine*, 3 Hurls. & Colt. 977, in which the whole question was fully examined, and the passage in Story's work upon Agency, §§ 295, 296, that the seaman, if he brings an action against the one, and does not obtain satisfaction of his claim, may bring an action against the other, is declared to be erroneous, and without any authority to support it.

The remaining question is whether the defendant Baxter, who, after the commencement of the voyage, succeeded from the position of mate to that of master, is liable in an action

brought by the seaman for his wages.  If the reason given by Story, in his work upon Agency, for the liability of the master upon contracts of this character, that it was introduced into the maritime law in favor of commerce, that the parties to such contracts might not be compelled to seek after the owner to sue him, but might have a twofold remedy against the master and the owner (Story on Agency, § 294); is the true reason, it is one that would apply as well against the person who, during the voyage, succeeded to the position of master, as to the one with whom the contract was originally made.  But in this case, there is something more.  The seamen, by the express language of the shipping articles, bound themselves, not only to the person who was master at the time, but to any one who should lawfully succeed him during the voyage, and the mate is the one who succeeds to that position, for the contract of the mate is, says Lord Stowell, in *The Favorite*, 2 C. Rob. 237, " not only that he shall perform the duties of mate, but also, by necessary implication of law, that he shall, in case of necessity, take upon himself also the duties of master."  The defendant Baxter was, at that time, first mate, and had knowledge of the engagement entered into by the seamen, as he, together with the person who was then the master, signed, with the seamen, the shipping articles.  Baxter became the master in the port of Leghorn, under what circumstances is not disclosed, but it was when the voyage for which the seamen shipped had not been completed.

It was held in *Wysham* v. *Rossen*, 11 Johns. 72, that a seaman could not maintain an action for wages against a substituted master; but the circumstances were peculiar.  The plaintiff, a seaman, shipped at Baltimore, and upon the voyage the vessel was captured by a British cruiser.  She was brought into Jamaica, where the men were imprisoned, and whilst they were imprisoned, the captain returned to Baltimore.  The vessel was afterwards discharged in a Court of Admiralty, as she had a British license, and the owner in Baltimore sent out a part owner to take charge of her, and bring her home as master.  The crew, upon being released from prison, returned to the ship.  They were informed by the new master that he

o

had been discharged in admiralty, and with the same crew he brought the vessel home to New York in ballast. The court treated the return to New York from Jamaica as a new voyage, and held that the defendant had engaged the seamen for that voyage only ; that he had not assumed the contract of the former master, nor contracted for any other voyage than the one from Jamaica to New York, and was not liable for the wages of the seamen during the voyage which had been broken up by the capture. "The only case," said the court, "in which it can be supposed that a new or substituted master assumes the contract is, when he takes upon himself the original voyage ;" and that is exactly this case, and may be put in this wise ; that the substituted master who takes the command and completes the voyage is answerable in an action brought by the seamen to recover for the wages which were earned during the voyage.

In *Read* v. *Chapman* (2 Str. 937 ; 2 Barnardiston's K. B. 160 ; 2 Kel. 226), the plaintiff went out as mate, and the master having died during the voyage, the mate succeeded to the command of the ship. Having brought her home, he sued in the admiralty, both for his wages as mate and for a further allowance after he became master ; but the Court of King's Bench granted a prohibition to the admiralty against his recovering an additional allowance for the time that he was master. Lord Stowell, in *The Favorite* (2 C. Robs. 237, 238), indicates very clearly that he was not satisfied with the correctness of this decision. He said, that by the maritime law, the mate was *hæres necessarius* to the employment of master in case of necessity, and he thought that the suit might be maintained, not under view of a contract entered into by the mate as master, but as a consequence arising originally out of the primary contract by him as mate ; but as it had been a prohibition from a common law court, which necessarily proceeded upon the ground of a want of jurisdiction in his court, he was bound to conform to it. No reasons are given for the decision, in *Read* v. *Chapman,* in the brief report of that case in Strange ; but in another report of it in 2 Barnardiston's K. B. 160, it appears that it was suggested that, although the admiralty had no juris-

diction for the wages of a master, it had for the wages of the mate, and that the suit for wages as master in that case was only an incident to the other ; but that the court was of a different opinion; so that the case was decided, it would seem, upon the ground assigned by Lord Holt in *Clay* v. *Snelgrove* (1 Ld. Raym. 577; 12 Mod. 406); and held in *Ragg* v. *King* 2 Str. 858); and *Bayley* v. *Grant* (1 Salk. 33; 1 Ld. Raym. 632), that a master cannot sue in the admiralty for his wages; that as an indulgence, the common law courts permitted mariners to sue in the admiralty for their wages, but would not extend it to the master of a ship ; "for there are," said Lord Holt, in *Clay* v. *Snelgrove*, "many precedents in the courts of admiralty of suits by the mariners for their wages, but none for the master of the ship." This case of *Read* v. *Chapman*, therefore, is to be limited, as a precedent, to the precise point decided, and, beyond that, no rule or principle is to be extracted from it. In a case referred to in 2 Peters' Admiralty Decisions, p. 247, *note*, the mate who had succeeded to the position of master, was offered by the owner as a witness in a suit brought by the seamen for their wages, and the question arising whether he should be excluded as interested, upon the ground that he was answerable to an action by the seamen for the wages; the court, though inclining strongly to the opinion that he was not answerable, still declined to determine that point, so as to preclude further investigation if the question should arise *directly*, but admitted him as a witness on behalf of the owner. In regard to the weight to be attached to this case as a decision, it is sufficient to say that the master was a competent witness for the reasons already given, that he was discharged; the seamen having elected to proceed in the admiralty against the owner, and little weight is to be given to an opinion upon a point which the court would not decide, as matter of law, without further investigation. In *The United States* v. *Hamilton* (1 Mason, 443); *The United States* v. *Harris*, (5 *id.* 272); *United States* v. *Cassidy*, (2 Sumner, 582); and *Bray* v. *The Atalanta*, (Bee's R. 48), it was held that the shipping articles with the seamen are not dissolved by the death, resignation, or removal of the original master and the substitution of another, and it

would seem to follow from this, that the substituted master, in assuming the command of the vessel and the completion of the voyage, acquires, in that capacity, all the power and authority which the former master had over the seamen by virtue of their contract, and must necessarily take with it all the onerous obligations which the maritime law imposes as a consequence of the contract made with the seamen; or, in other words, if they, under the contract, are bound to him, he must be equally bound to them.

The liability of the master is attended with no hardship, at least in this country, where the equitable principle has been recognized, that he has a lien upon the freight for any disbursements made or responsibilities incurred on account of the vessel ( *Van Bokelin* v. *Ingersol*, 5 Wend. 332, 334, 338); so that if he pays the wages of the seamen, he has his security upon the freight for the amount paid to them, and if the law holds the substituted master who completes the voyage, equally answerable to the seamen, it would hold also, if he pays them, that he has the same lien for his security.

While this will impose no hardship upon the substituted master, it serves to protect the seamen whose interest it has been the policy of the maritime law especially to watch over, as a most useful class, frequently ignorant of their exact rights, and who, from the migratory character of their occupation, their confiding nature, thoughtlessness and improvidence, are but little able to protect themselves, and easily imposed upon. (*Brown* v. *Lull*, 2 Sum. R. 443, 444).

It was established by the testimony of the plaintiff, of the steward, and another seaman, that the captain, whilst the vessel was in the port, presented a pistol to the plaintiff's head, and threatened to shoot him; that five minutes afterward, the boatswain was shot by the captain, and that seventeen days after, the plaintiff having performed all his services up to that time, left the vessel, being afraid of his life; seven of the crew having left previously, and three others at the same time. This was quite as strong a case as *Limland* v. *Stephens*, 3 Esp. R. 271, in which Lord Kenyon held that the mariner is not bound to serve at the peril of his life. That desertion, to be an

answer to the seaman's claim for wages, must be a voluntary act on his part, and not caused by an act of the captain, which makes the dissolution of the contract necessary and justifiable on the part of the seamen; and in *The America*, Blatch. & How. R. 185, Judge Betts held that where a seaman was unjustifiably beaten by the mate, and left the vessel in consequence, it amounted to a discharge; or if it did not, that the seaman was justified in leaving the vessel from a regard to his own personal safety, and might recover his wages, and to the same effect are the cases of *Ward* v. *Ames*, 9 Johns. 138; and *Rice* v. *The Polly and Kitty*, 2 Peters' Adm. Decisions, 420.

We cannot look into the affidavits which are submitted for the purpose of contradicting the justice's return. Upon an appeal, we are governed by the return. If it is untrue, the remedy is an action against the justice for a false return.

The allowance made was in the discretion of the court, which may have been properly exercised, for all that we know, or that appears upon the appeal.

The judgment must be affirmed as to Baxter, and reversed as to the owners of the vessel.

Judgment accordingly.