*J. L. Powers*, for the plaintiff.

*J. O. Teele*, for the defendants.

---

### CHARLES SMITH *vs.* FRANK L. OAKES.

Suffolk.    March 12. — April 1, 1886.    W, ALLEN & HOLMES, JJ,, absent.

The master of a vessel is personally responsible for the wages of a seaman accruing while he is master, although the seaman was hired by the former master of the vessel.

If wages accrue to a seaman under two different masters of a vessel, and payments are made by the latter master out of money belonging to the vessel, such payments are, in the absence of a specific appropriation by either party, to be applied to the earliest items of the account.

CONTRACT against the master of the ship P. N. Blanchard for the wages of the plaintiff as a seaman. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff joined said ship, an American vessel, and signed the shipping articles, in the statutory form, at San Francisco, on March 26, 1882 ; he remained on board the ship until December 5, 1883, when he was discharged by the defendant, who, pursuant to the United States statutes, signed and delivered to him a certificate of discharge.

At the time of the said discharge, the defendant, as provided in the United States statutes, delivered his statement of the plaintiff's account of wages to the shipping commissioner, and offered to pay the plaintiff at a certain rate of wages, which the plaintiff refused to accept in settlement, demanding his pay as ordinary seaman, $20 a month.

In March, 1882, when the plaintiff was employed, the master of the ship was N. W. Blanchard, who signed the shipping articles as such master ; and he, acting for said ship, engaged and hired the plaintiff. From San Francisco the ship sailed to other ports, and finally to Cardiff, Wales. Here Captain Blanchard was taken sick and left the vessel; and on October 12, 1882, the defendant, who was sent from this country by the owners of the ship for that purpose, took command of the vessel at Cardiff and sailed the ship to Hong-Kong, Iloilo, Manila, and Boston, remaining in command until the termination of the voyage at Boston.

The defendant asked the judge to instruct the jury as follows: " 1. The plaintiff cannot recover in this action against the defendant for services on the ship P. N. Blanchard, it being admitted that the defendant was neither the owner nor the master that hired the plaintiff. 2. The temporary master of a vessel is not responsible for the wages of a seaman whom he has not hired, and whom he finds on a vessel of which he takes command in a foreign port, some six months after the seaman was hired."

The judge refused to give these instructions, and ruled that the defendant was liable, under the circumstances, for the plaintiff's wages that were earned and accrued during the time that the defendant was actually in command of the ship.

It appeared in evidence that sundry payments had been made to the plaintiff on account of his wages, both by Captain Blanchard and by the defendant, of which no special application had been made by either. The defendant contended, and asked the judge to rule, that payments made by the defendant should be applied in reduction of the defendant's liability. All these payments had been made from money of the ship; and the account with the plaintiff, kept by the defendant in the official log-book, was an account with the ship P. N. Blanchard. The payments

made by Captain Blanchard were less in amount than the wages that accrued during his command of the vessel. The judge ruled, that, the parties having made no application of the payments, the law would apply all payments so made, either by Blanchard or by the defendant, to the earliest accruing items of the plaintiff's wages; and that, accordingly, the payments so made by the defendant should be applied to extinguish the balance of the plaintiff's wages earned during the captaincy of Blanchard, and not satisfied by Blanchard's payments.

The jury found for the plaintiff, for an amount exceeding the amount of his wages earned during the defendant's captaincy above the payments made by the defendant. The defendant alleged exceptions.

*H. N. Sheldon*, for the defendant.

*F. S. Hesseltine*, for the plaintiff.

C. ALLEN, J. The original master having fallen sick and left the ship during the voyage, the first question for determination is, whether the defendant, in the absence of an express contract to that effect, and merely by virtue of his relation as a new and substituted master for the remainder of the same voyage, is held bound by law upon an implied contract to pay to the seamen their stipulated wages, so as to be personally liable in an action at law for their wages earned after his accession to the office, and we are of opinion that he is. The liability rests on the peculiar relation which the master sustains to the seamen, the owners, and the ship, and not upon general principles of agency. The agreement in the shipping articles is with the master, or whoever shall go for master, and the crew agree to be obedient to the lawful commands of the master, or of any person who shall lawfully succeed him. U. S. Rev. Sts. § 4612, Sched. A.

Wages already earned do not become due at once upon a change of master, and, unless the new master is liable, the remedy by an action against the master after the wages fall due would often be practically worthless, as the original master might be dead, or in a distant port. The new master represents the owners and the ship, and has charge of the funds from which the wages are usually and naturally paid. He knows, or has the means of knowing, exactly what the wages will be, and can easily

protect himself from risk. It is not necessary to determine now whether his personal liability extends so far as to include wages earned before he took command. But when a new master takes upon himself the unfinished portion of a voyage, it is no hardship upon him to hold him bound by law to assume the contract for the payment of such wages as may thereafter be earned by the seamen under his command, who on their part are bound by contract to obey him ; unless, indeed, he does something to show that such is not his intention. The case of *Fitzsimmons* v. *Baxter*, 3 Daly, 81, is closely in point; and while other decisions are not very explicit upon this question, the prevailing opinion of courts and text writers has been in the same direction. See *Bishop* v. *Shepherd*, 23 Pick. 492 ; *Temple* v. *Turner*, 123 Mass. 125 ; *Farrel* v. *M'Clea*, 1 Dall. 392 ; *Bray* v. *The Atalanta*, Bee, 48 ; *Wysham* v. *Rossen*, 11 Johns. 72 ; Flanders on Shipping, §§ 331 *& seq.* ; Curtis on Merchant Seamen, 327. An action at law is a proper remedy. *Leon* v. *Galceran*, 11 Wall. 185, 188. U. S. Rev. Sts. § 4547.

The payments made by the defendant from the money of the ship were properly applied to the wages earned before he took command. It is not as if he had made the payments from his own money. The ship and the owners were responsible to the seamen ; the ship's money was paid to them.

*Exceptions overruled.*