JAMES BAXTER *vs.* JOHN DOE & another.
THOMAS NEWMAN *vs.* SAME.
JOHN LAURELL *vs.* SAME.

Suffolk.    March 3. — October 23, 1886.

The St. of 30 & 31 Vict. c. 124, § 7, provides that, if a seaman who is ill has not, through the neglect of the master or owner, been provided with proper food, or water, or anti-scorbutics, the master or owner shall be liable to pay all expenses properly and necessarily incurred by reason of such illness (not exceeding in the whole three months' wages) by the seaman, but that this " shall not operate so as to affect any further liability of any such owner or master for such neglect, or any remedy which any seaman already possesses." *Held,* that this statute did not take away the right of a seaman to maintain an action against the owners of the vessel for injuries sustained, to a greater amount than three months' wages, by reason of the failure of the master to furnish proper food and anti-scorbutics, as provided for in the shipping articles.

In an action by a seaman against the owners of a vessel for injuries caused by the neglect of the master to furnish suitable provisions and anti-scorbutics, as required by the shipping articles, evidence of the similar sickness, under the same conditions, of others of the crew on board the vessel about the time of the plaintiff's sickness, is admissible.

A seaman, who has shipped on an English vessel under articles sanctioned by the Board of Trade in pursuance of the St. of 17 & 18 Vict. c. 104, and which require the supplying of specified provisions and anti-scorbutics to the crew during the voyage, may maintain an action against the owners of the vessel for injuries caused by the neglect of the master to comply with such requirements.

The writ in an action by a seaman described the defendants by the fictitious names of "John Doe and Richard Roe, owners " of a certain vessel. The vessel was attached, and the writ was served on the master of the vessel, who gave bond with sureties to release the vessel from attachment. No change in ownership occurred while the vessel was on the voyage during which the cause of action arose, up to the time of the attachment. An appearance by counsel was entered

for the defendants, and an answer filed. At the trial, the judge was asked to rule that the plaintiff must show the ownership of the vessel by the defendants, as alleged in the writ. *Held,* that the ruling requested was rightly refused.

GARDNER, J. In each of these actions, the plaintiff claims damages of the defendants, for the neglect to furnish him with proper and suitable food, provisions, care, and treatment, during a voyage on the ship Earl Granville, upon which he shipped as an able-bodied seaman. The defendants contend that, although the master of the ship may be liable for such negligence, the owners are not responsible. By reason of the shipment, the relation of seamen to the master, to the owners, and to the ship is, under the maritime law, peculiar. The contract they enter into may be enforced to recover wages against the owner, the master, or the vessel. *Temple* v. *Turner,* 123 Mass. 125. *Smith* v. *Oakes,* 141 Mass. 451. The general obligations of the contract of shipment are, that the owner and master shall provide for the subsistence of the mariners, during the time of the continuance of the contract, in such manner, and with such provisions, as the positive law of their country enjoins. Curtis on Merchant Seamen, 27. *Foster* v. *Sampson,* 1 Sprague, 182. But such a statutory provision does not, unless it points out the remedy and allows this remedy only, prevent the recourse by seamen to their right of bringing suit for damages sustained by them from the wilful or negligent conduct of the master or owners. *Couch* v. *Steel,* 3 El. & Bl. 402. *Collins* v. *Wheeler,* 1 Sprague, 188.

In the cases at bar, the plaintiffs did not rely upon the necessary presumption of the maritime law growing out of the relation of seaman to shipowner, but they relied upon direct evidence showing a statutory duty on the part of shipowners to furnish provisions and anti-scorbutics to the crew. The vessel was an English ship, and the shipping articles which the plaintiffs signed were " regular English articles," sanctioned by the Board of Trade in pursuance of the English statute law (17 & 18 Vict. *c.* 104). All the parties agreed that the cases were governed by the English law, and they were tried upon this agreement.

The English statutes were put in evidence, and in the shipping articles the provisions for each day of the week were stated, with this heading: " Scale of provisions to be allowed

and served out to the crew during the voyage, in addition to the daily use of lime and lemon juice and sugar, or other anti-scorbutics, in any case required by law." This made the English statutes applicable to the vessel and crew, by express contract in the shipping articles, so far as they required the use of lime and lemon juice and sugar, or other anti-scorbutics.

The Merchant Shipping Act of 1854, (17 & 18 Vict. c. 104, § 109,) put in evidence, provides that the requirement as to provisions, health, and accommodations of seamen shall apply to all ships registered in any of her Majesty's dominions abroad, when such ships are out of the jurisdiction of their respective governments, and to the owners, masters, and crews of such ships, and to all ships registered in any British possessions. The Merchant Shipping Act of 1867 (30 & 31 Vict. c. 124, § 4, cl. 5) provides that so soon as the crew have been at sea for ten days, and during the remainder of the voyage, the master shall serve out lime or lemon juice daily to the crew, at the rate of an ounce each day to each member of the crew. Section 7 provides that, if a seaman who is ill has not, through the neglect of the master or owner, been provided with proper food, or water, or with anti-scorbutics, the master or owner shall be liable to pay all expenses properly and necessarily incurred by reason of such illness (not exceeding in the whole three months' wages) either by the seaman or by certain public officers mentioned; but that this "shall not operate so as to affect any further liability of any such owner or master for such neglect, or any remedy which any seaman already possesses."

Under these statutes, we are of opinion that there was evidence that it was the duty of the master or owners to furnish and supply the ship with suitable and wholesome provisions, and with lime or lemon juice for the voyage; and that it was the duty of the master to serve such provisions, and also such lime or lemon juice, to the plaintiffs during the voyage. The evidence tends to show that there was a breach of this duty on the part of the master; that no lime or lemon juice, or any anti-scorbutics, were served to the crew until the ship had been out one hundred and twelve days, except during about three weeks, when they had once a week, for six men, about a pint of bad vinegar, unfit for use.

The defendants asked the court to instruct the jury that the owners were not liable for the master's default, which request was refused. The owner is responsible for the direct consequences of any wrongdoing of the master, which is done by him as master, in the discharge of his duty, and under the authority given him as master. *Sheffield* v. *Page*, 1 Sprague, 285. *Hunt* v. *Colburn*, 1 Sprague, 215. *Foster* v. *Sampson*, *ubi supra*. 2 Pars. Ship. & Adm. 29. The contract between the plaintiffs and the master was in fact made between the plaintiffs and the owners. The master was the owners' agent in making such contract. "If it was broken by the wrongful act of their authorized agent, they are bound to make compensation for such breach to the party injured." *Croucher* v. *Oakman*, 3 Allen, 185. The instruction requested was properly refused.

The court admitted evidence, against the defendants' objection, of the similar sickness of others of the crew, on board the ship, about the same time that the plaintiffs were sick. It is difficult to find a case where all the conditions and circumstances affecting all the crew were so similar. As suggested by the plaintiffs in their argument, the crew lived together in the same quarters, on the same vessel, for the same length of time, worked in the same employment, were subjected to the same climatic influences, hardships, deprivations, and manner of life, partook of the same food at substantially the same time, were deprived of anti-scorbutics for the same length of time, and, of the crew of twelve, eight were affected at about the same time with the same symptoms of disease. This evidence presented but one issue to the jury, excluded all separate and collateral issues, and tended directly to prove that the provisions served to the crew were unsuitable and insufficient, and that the sickness was occasioned by the want of anti scorbutics. Upon the offer of proof made, the Superior Court was justified in admitting the testimony. *Eidt* v. *Cutter*, 127 Mass. 522. *Hawks* v. *Charlemont*, 110 Mass. 110. *Lincoln* v. *Taunton Copper Co.* 9 Allen, 181.

The writ in each case described the defendants by the names of "John Doe and Richard Roe, owners of the ship Earl Granville," and was served on the master of the ship. The master gave bond with sureties to release the attachment on the ship. The defendants or the owners appeared by counsel, and denied

each and every allegation in the plaintiff's writ and declaration contained, and more particularly specified several defences. The bill of exceptions states that "these suits were begun against the defendants, under the fictitious names of John Doe and Richard Roe. . . . . It was not contended that there had been any change in the ownership of said vessel while on said voyage up to the time she was attached."

From the commencement of these several actions to the argument of this bill of exceptions, they have been defended by counsel. None but the true owners could have appeared, and no others would have had any interest to appear. It must be assumed, as a conceded fact, that the true owners of the ship have defended these actions. The cases have been tried with great persistency, and no objection has been made by the owners that they were described in the writs by the recognized fictitious names of John Doe and Richard Roe. There could have been no misunderstanding by the real owners, that the names set out in the writs were not the true names of the real owners.

" When the name of a defendant is not known to the plaintiff, the writ may be issued against him by a fictitious name, and, if duly served, shall not be abated for that cause, but may be amended on such terms as the court deems reasonable." Pub. Sts. c. 161, § 20. Under this statute, when a fictitious name is inserted in a writ, it should be alleged, in some form, that the name is fictitious, and so used because the real name of the defendant is unknown. The statutory requirement would thus appear upon the record, and the allegation under the statute would be a sufficient answer to a plea in abatement. No such pleas were filed in these cases. We need not inquire whether the writs were duly served, because the defendants voluntarily appeared in court, submitted to its jurisdiction, and filed answers to the plaintiffs' declarations.

We have then the case of the plaintiffs' bringing themselves within the terms and provisions of the statute, and being rightly in court. There is no question of jurisdiction, either of parties or of subject matter. The true owners of the ship appear, and set out in their answers their defences. The cases are fully tried upon their merits, and the defendants ask the court to rule, " that the plaintiffs must show the ownership by these defendants of

the ship Earl Granville, as alleged in their writs. As there is no evidence of such ownership in these cases, the verdict must be for the defendants." The proposition to require proof that fictitious persons were the actual owners of the ship, is absurd. We do not think that the court should have ruled, under all the circumstances of the trial, that it was necessary for the plaintiffs to prove the ownership of the ship Earl Granville by John Doe and Richard Roe, as alleged in their writs. It was not requisite that the plaintiffs should prove that the fictitious persons named as owners were the actual owners of the ship. Whether other rulings should have been given, if proper requests therefor had been made, we are not called upon to determine.

*Exceptions overruled.*

*J. M. Browne,* for the defendants.

*C. T. Russell, Jr.,* (*S. W. Trowbridge* with him,) for the plaintiffs.