VINCENZO BIANCUCCI, administrator, *vs.* MICHELE NIGRO.

Suffolk.        October 15, 1923. — November 28, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Physician or Surgeon. Evidence*, Competency; Relevancy or materiality; Opinion: expert. *Witness*, Expert.

At the trial of an action by an administrator against a surgeon for conscious suffering and the death of the plaintiff's intestate alleged to have been caused by negligence of the defendant in the use of chloroform as an anesthetic, where the defendant contended " that the death was due to the presence in the body of the intestate of an abnormally enlarged thymus gland," it was error to permit an expert physician to testify to an examination of the body of a thirteen year old girl, who had been brought to a hospital for the removal of enlarged tonsils and adenoids, and to state that her death " was due to syncope under the influence of a general anesthetic administered for surgical purposes in the presence of a fifty gram thymus gland," it not appearing that the conditions or circumstances, such as the health of the child, the amount of anesthetic administered, and other conditions affecting the result, were the same in the illustrative case as in the case on trial; and an exception thereto must be sustained where it was apparent from the record that this testimony was likely to have weight with the jury because the other physicians called by the defendant disclaimed any special knowledge as to thymus gland diseases and the effect of chloroform on those suffering therefrom.

An exception to a ruling by a judge presiding at a trial refusing to permit a physician called by the plaintiff to testify as an expert was overruled, because the determination of the qualifications of the expert rested in the discretion of the trial judge and it did not appear that the discretionary power had been abused.

TORT by the administrator of the estate of Vittoria Biancucci, with a declaration, as amended, in which the plaintiff claimed damages for the conscious suffering and the death

of the intestate due to the use of chloroform as an anesthetic. Writ dated December 24, 1919.

In the Superior Court the action was tried before *White*, J. The testimony of Dr. DeAmezaga relating to his qualifications was as follows: " that he was a physician and surgeon, specializing in surgery; a graduate of Genoa University, and that after graduating he was connected with the City Hospital of Genoa, where he was the anesthetizer for six years, using chloroform exclusively, having had one thousand eight hundred and twenty-three cases under his supervision as anesthetizer, that after leaving that hospital he came to this country and for twenty-eight years had been practising in Boston, specializing in surgery; that he was not a member of any medical society; that in the past twenty-five years he had administered chloroform but twice, that he had practised surgery down to the present time except for an interval following an accident in 1917 which incapacitated him for about three years; that he has received $50,000 from the insurance companies up to the present time on the claim that as a result of the accident he had been incapacitated for about three years, that for about one year since that time he had been practising surgery constantly, having entirely recovered from the automobile accident which he had; that during the period before the accident he had performed thousands of operations; that during the last year he had heart cases, appendix cases, stomach cases, and bone cases; that he performed many operations without an assistant, only with the aid of a nurse . . . that, during the past year, he made three gastro enterostomitis operations, meaning junction of intestines in back of stomach, three for osteomalacia of the femur, and one of the tibia osteomalacia, perhaps thirty to thirty-five appendix operations, ten to fifteen gynecological operations requiring the opening of the abdomen fixation, ' suspension of the uterus, those simple things I do not remember, hernia I made quite a number, umbilical hernia, inguinal hernia, all major operations; ' that he then had eight patients at the Summit Hospital in Brookline, upon whom he was to operate, that chloroform is not in general use in the United States as an anesthetic;

that during the time the witness was in Boston he went every day to the Massachusetts General Hospital for about thirteen years studying the operations; that he administered chloroform once in the City Hospital for Professor Monks, and once at the Massachusetts General Hosiptal for Doctor Warren and Doctor Cushing. He was a pupil of Doctor Porter, Doctor Mosher and Doctor Warren of Harvard during his whole stay in Boston, that he was doing special research work and was allowed the freedom of the dissecting room from 9 to 12 in the whole medical school and every place in the Massachusetts General Hospital and was called to the Boston City Hospital when there was something of interest to be done, that he has been connected with the Cushing Hospital since its foundation twenty-five years ago and had been in active practice of surgery in all its branches during all the time that he was in Boston other than those three years during the time of his injury, that during the time of his injury he was reading, he could only lie down flat on his back on account of a broken back, that during all the years of his practice up to the present time he had kept in touch with the effect and use of the different anesthetics including chloroform."

The trial judge, subject to the plaintiff's exception, refused to permit the witness to testify as an expert.

Other material testimony and exceptions by the plaintiff are described in the opinion. The jury found for the defendant. The plaintiff alleged exceptions which, after the resignation and death of *White*, J., were allowed by *Wait*, J.

*H. E. Perkins*, for the plaintiff.

*Joseph Wentworth*, for the defendant.

DeCourcy, J. This is an action of tort to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence in administering an anesthetic. The intestate, a girl about ten years of age, received a small wound on the right thumb; and the defendant inserted three stitches, after using chloroform as an anesthetic. The child died without recovering consciousness. The contention of the defendant was that the death was due to the presence in the body of the intestate of an

abnormally enlarged thymus gland. There was a verdict for the defendant. The plaintiff's exceptions relate to the admission and exclusion of testimony.

1. Subject to the plaintiff's exception, Dr. McGrath, a witness for the defendant, was permitted to testify to an examination of the body of a thirteen year old girl, who had been brought to a hospital for the removal of enlarged tonsils and adenoids; and to state that her death "was due to syncope under the influence of a general anesthetic administered for surgical purposes in the presence of a fifty gram thymus gland." The defendant's contention that evidence of this collateral fact was admissible as " a similar instance" cannot prevail. An inference that the death of the plaintiff's intestate was due to the influence of chloroform in the presence of a thymus gland weighing fifty-one grams or about one and two thirds ounces could not properly be drawn from the mere fact that another child, of thirteen years with a fifty gram thymus gland, died from the influence of a general anesthetic administered for surgical purposes. It does not appear that the conditions or circumstances, such as the health of the child, the amount of anesthetic administered, and other conditions affecting the result, were the same in the illustrative case and in the case in hand. Wigmore on Ev. (2d ed.) § 442. *Emerson* v. *Lowell Gas Light Co.* 3 Allen, 410, 417. Compare *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 171. *Baxter* v. *Doe,* 142 Mass. 558. The defendant now further argues that the evidence in question was admissible as the reason on which Dr. McGrath formed his opinion. But it was not offered on that ground. On the contrary the doctor expressly disclaimed any experience in the administration of anesthetics, and testified that "he had had no experience in recent years with a live human being so far as the use of chloroform or ether is concerned." It is apparent from the record that this testimony was likely to have weight with the jury, because the other physicians called by the defendant disclaimed any special knowledge as to thymus gland diseases and the effect of chloroform on those suffering therefrom. We are of opinion that it was incompetent, and the exception to its admission must be

sustained.  *Hunt* v. *Boston*, 152 Mass. 168.  *Commonwealth* v. *Tucker*, 189 Mass. 457, 479.

2. The other exceptions are to the exclusion of certain qualifying questions which the plaintiff's counsel put to his witness Dr. DeAmezaga, and to the ruling of the trial judge that the witness was not qualified to answer as an expert. It is difficult to understand why some of the questions were excluded, since they related directly to the medical experience of the witness, his knowledge of the use of chloroform, and his study of the thymus gland.  These however become immaterial if said ruling was correct.  From a reading of the record it would appear that Dr. DeAmezaga might well have been permitted to testify as an expert.  But as the judge had an opportunity to observe the mental capacity of this witness (who had suffered a severe injury within a few years), and to form an opinion of the credibility of his testimony, we are not quite prepared to say that in deciding whether the witness was qualified to give expert testimony there was such an abuse of judicial discretion as to constitute error in law.  *Jordan* v. *Adams Gas Light Co.* 231 Mass. 186, and cases cited.  *Old Colony Trust Co.* v. *DiCola*, 233 Mass. 119.

*Exceptions sustained.*