# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

COMMONWEALTH *vs.* LINCOLN L. REILLY.

Suffolk.    January 10, 1924. — February 25, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Untrue and Misleading Advertisement. Pleading, Criminal,* Indictment. *Constitutional Law,* Due process of law, Police power, Equal protection of laws. *Evidence,* Competency; Opinion: expert. *Witness,* Expert.

An indictment charging a violation of G. L. c. 266, § 91, by the publication of advertisements containing assertions, representations and statements of fact which were untrue, deceptive and misleading and which the defendant knew or might on reasonable investigation have ascertained to be untrue, deceptive and misleading, is not open to objection as matter of form if it follows the terms of the statute.

Section 91 of G. L. c. 266, in its requirement that one element of the crime therein charged shall be that the accused person "knew or might on reasonable investigation have ascertained " that assertions contained in the advertisement published by him as described in the section are "untrue, deceptive or misleading," does not violate the requirements of art. 12 of the Declaration of Rights by not fixing an ascertainable standard of guilt, or by failing to convey to the person accused a defined measure of conduct, or by failure to forbid a specific act, or by being so broad as to be vague and uncertain.

Section 91 of G. L. c. 266 is a valid exercise of the police power by the General Court and is not a violation of the Constitution of the Commonwealth or of the Constitution of the United States.

Certain rulings by a judge presiding at the trial of an indictment for a violation of G. L. c. 266, § 91, adjudging a chemical expert to be a competent witness relating to a substance which was the subject of the alleged wrongful advertisements, and admitting in evidence certain questions

asked of such witness, were *held*, not to have violated the discretionary power of the court; and the testimony of the expert was *held*, not to be open to the objection that he attempted to pass upon the truth of other evidence or to base his conclusions on unstated inferences from other evidence.

INDICTMENT in eleven counts, found and returned on December 17, 1921, charging the defendant in language conforming to G. L. c. 266, § 91, with the publication of false and misleading advertisements respecting an article called Fam-O.

On motion by the defendant, the Commonwealth filed a bill of particulars specifying assertions, representations and statements of fact made by the defendant which it relied upon as being untrue, deceptive and misleading.

The indictment was tried before *O'Connell*, J. Material evidence and exceptions by the defendant are described in the opinion. The defendant was found guilty on eight counts, and alleged exceptions.

The defendant was sentenced to pay a fine of $200, and execution of the sentence was suspended until further order of the court.

*L. Marks*, for the defendant.

*M. Caro*, Assistant District Attorney for the Commonwealth, submitted a brief.

RUGG, C.J. This indictment charges that the defendant, at divers times set forth in several counts, published in certain newspapers, respecting an article called Fam-O, advertisements containing assertions, representations and statements of fact which were untrue, deceptive and misleading, and which the defendant knew and might on reasonable investigation have ascertained to be untrue, deceptive and misleading. The indictment is based on G. L. c. 266, § 91. That section is in these words: " Any person who, with intent to sell or in any way dispose of merchandise, securities, service, or anything offered by such person, directly or indirectly, to the public for sale or distribution, or who, with intent to increase the consumption of or demand for such merchandise, securities, service or other thing, or to induce the public in any manner to enter into any obligation

relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public within the Commonwealth, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter, or in any other way an advertisement of any sort regarding merchandise, securities, service or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, and which such person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading, shall be punished by a fine of not less than ten dollars nor more than five hundred dollars; . . . " with a proviso not here material.

The indictment follows the terms of G. L. c. 266, § 91. Therefore, as matter of criminal pleading it is not open to objection. *Commonwealth* v. *Pentz*, 247 Mass. 500.

The defendant contends that the statute itself is unconstitutional because it fails to conform to the requirements of art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. That article provides that "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him. . . . And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." It is urged that the statute involved in the case at bar does not fix an ascertainable standard of guilt, that it conveys to persons accused of its violation no defined measure of conduct, that it does not forbid any specific act, and that it is so broad as to be vague and uncertain. Article 12 of the Declaration of Rights is an important safeguard of individual liberty. All statutes must conform to its requirements. Crimes can be created only by specification to a reasonable degree of definiteness of conduct forbidden or enjoined. Acts to be

done or avoided must be stated with clarity. A guide or rule in the description of conduct must be established capable of being understood by the ordinary member of society. The duty of the individual must be set out with such explicit definition that the law abiding may avoid prosecution and find protection. *Commonwealth* v. *Badger,* 243 Mass. 137. *Commonwealth* v. *Pentz,* 247 Mass. 500. *Commonwealth* v. *Atlas,* 244 Mass. 78, 82.

The chief attack on the statute is directed against that part which authorizes a verdict of guilty for publishing as an advertisement in a newspaper an untrue, deceptive or misleading assertion, representation or statement, whose untrue, deceptive or misleading nature " might on reasonable investigation " have been ascertained.. It is argued that " reasonable investigation " is not a definite standard of conduct, but varies so much with the idiosyncrasies of each individual that it is vague and uncertain.

The common law has established many tests for separating criminal from noncriminal conduct based on what a jury may think is reasonable. Self-defence as a justification in cases of homicide is made out by proof that the defendant had reasonable cause to believe, and in truth did believe, that it was necessary to strike in order to protect his own person, and that the mortal blow was given solely for that purpose. *Commonwealth* v. *Woodward,* 102 Mass. 155, 161. *Commonwealth* v. *Crowley,* 165 Mass. 569, 570. In *Commonwealth* v. *Presby,* 14 Gray, 65, a police officer was indicted for assault and battery. The defence was that the alleged crime was committed in arresting one for being intoxicated on a public street in the night time under the mandate of a statute. It was held that the defence was made out by proof that the defendant, acting in good faith, had " reasonable cause " to believe that the person arrested was intoxicated even though not intoxicated in fact. The dividing line between guilt and innocence in the criminal law is whether a jury are satisfied beyond a " reasonable doubt " that the defendant committed the crime charged. *Commonwealth* v. *Webster,* 5 Cush. 295, 319, 320. A large number of statutory crimes are made to depend for one

essential element upon conduct described as reasonable or unreasonable. See, for example, " without reasonable care," G. L. c. 266, §§ 8, 9, with or without " reasonable cause," G. L. c. 269, § 13; c. 272, §§ 5, 88, unreasonable neglect or without making reasonable provision, G. L. c. 273, §§ 1, 20, *Commonwealth* v. *Burlington,* 136 Mass. 435, *Commonwealth* v. *Ham,* 156 Mass. 485, *Commonwealth* v. *Graham,* 157 Mass. 73, *Commonwealth* v. *Simmons,* 165 Mass. 356, *Commonwealth* v. *Shaman,* 223 Mass. 62, refusal to contribute reasonably, G. L. c. 273, § 15, *Commonwealth* v. *Callaghan,* 223 Mass. 150, certiorari denied, *Callaghan* v. *Massachusetts,* 241 U. S. 667, *Commonwealth* v. *Rosenblatt,* 219 Mass. 197. See *Commonwealth* v. *Cassidy,* 209 Mass. 24. In all the decisions just cited it was assumed without discussion that the statute was valid and convictions were upheld. These statutes are illustrative and are not intended to be an exhaustive collection. " Reasonable cause to know " has been an essential element for conviction in some aspects of our laws against the sale of intoxicating liquor, and has been explained in our decisions. *Commonwealth* v. *Joslin,* 158 Mass. 482, 494. *Commonwealth* v. *Gould,* 158 Mass. 499, 508. An indictment charging a conspiracy to establish a monopoly and to enhance unreasonably the price of a necessity of life in time of war, has been upheld as not vague or indefinite. *Commonwealth* v. *Dyer,* 243 Mass. 472, 490, 491. Definitions of negligence not infrequently refer to the conduct of a " reasonable man " as one of its elements. See Pollock on Torts, (Am. ed. from 3d. Eng. ed.) 537, 538. The person of ordinary caution and prudence often embodied in definitions of negligence is but another way of describing the reasonable person. See *Altman* v. *Aronson,* 231 Mass. 588, 591. There are statutory crimes resting upon negligent conduct. G. L. c. 268, § 29; c. 269, §§ 3, 4. Negligence of varying degrees has been made the basis of crime under numerous statutes, some of which are reviewed in *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8. Yet courts of other jurisdictions often have said that the distinction between ordinary negligence and gross negligence is incapable of definition. See *Massaletti* v. *Fitzroy,* 228 Mass.

487, 494–498, and cases there reviewed.   Reference has been made to these statutes and decisions, not as definitely concluding the point here raised, but because it is unlikely that so many statutes would have been enacted and so many decisions rendered upholding convictions thereunder if the point here raised were sound.   Their cumulative effect is entitled to consideration.

With respect to an argument as to vagueness and indefiniteness, it was said by Mr. Justice Holmès in delivering the opinion of the court in *Nash* v. *United States*, 229 U. S. 373, at page 377, " The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.   If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it ' by common experience in the circumstances known to the actor.   ' The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.'   *Commonwealth* v. *Pierce*, 138 Mass. 165, 178.   *Commonwealth* v. *Chance*, 174 Mass. 245, 252."

The case at bar is distinguishable from *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81.   The statute under consideration in that decision merely declared it to be unlawful " to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries."   It was held that no ascertainable standard of guilt was established and that the statutory words were not " adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them."

The statute here assailed prohibits as an inducement to business transactions the publication of untrue, deceptive or misleading statements or representations of fact.   If the statute had stopped here, it would have been invulnerable under many decisions upholding statutes which forbid the doing of some act wholly apart from any intent.   *Com-*

*monwealth* v. *Mixer*, 207 Mass. 141, and cases there collected. The present statute goes further and requires as an element to be found, before guilt can be established, either actual knowledge of the untrue, deceptive or misleading nature of the statement or representations by the defendant, or that such knowledge might have been acquired by him on reasonable investigation. It is manifest that here there is a fixed and ascertainable standard of guilt and that adequate information is given as to the nature and cause of the acts set forth in the accusation. Whether the falsity of the advertisement might have been ascertained on reasonable investigation is as definite a gauge of conduct as are involved in the many instances of criminal prosecution to which reference has been made.

That the crime defined by this statute is not open to sound objection in a constitutional sense, because it contains an element of degree about which there is no mathematical measure, is settled in principle by the decision in *Commonwealth* v. *Pentz*, 247 Mass. 500, where many cases are collected and reviewed.

It is not necessary to examine in detail decisions from other states relied upon by the defendant. They relate to statutes of differing terms.

The statute here attacked is a valid exercise of the police power under the numerous decisions collected and reviewed in *Holcombe* v. *Creamer*, 231 Mass. 99. `

We are of opinion that this statute does not offend against any guaranty of the Constitution of the United States. The reasons already stated appear to us decisive of that point. They also are set forth at length in *Commonwealth* v. *Pentz, supra,* and need not be repeated. The case at bar seems to us to be controlled by *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, *Nash* v. *United States,* 229 U. S. 373, *Fox* v. *Washington,* 236 U. S. 273, *Omaechevarria* v. *Idaho,* 246 U. S. 343, *Miller* v. *Strahl,* 239 U. S. 426, and to be distinguishable from *International Harvester Co. of America* v. *Kentucky,* 234 U. S. 216, *Collins* v. *Kentucky,* 234 U. S. 634, *American Seeding Machine Co.* v. *Kentucky,* 236 U. S. 660, and *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81.

There was no reversible error in refusing to strike out the entire answer of the chemical expert, because he was unable to state the precise elements of " a small amount of material of an orange color " forming a part of the article called Fam-O. The result of his analysis of the other constituent element of that article was pertinent upon the issues presented, and well may have been helpful.

The competency of the witness called as a chemical expert rested largely within the discretion of the trial court. There was no error in law in permitting him to express his opinions as to the value of the article in increasing the power to be derived from gasoline and the effect in that respect of some of its component parts. While the witness did not possess the highest degree of knowledge, it cannot be said as matter of law that his testimony was of no value. *Commonwealth* v. *Spencer,* 212 Mass. 438, 448. *Jordan* v. *Adams Gas Light Co.* 231 Mass. 186, 189. *Cook* v. *Fall River,* 239 Mass. 90, 94. *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 22.

The form of the questions to the witness does not disclose reversible error. He had made an analysis of the article. The fair import of some of the questions to which exception was saved is that they were grounded on the facts revealed by his analysis. In a case like this, where one proper subject of inquiry was the chemical composition of a specified article, it cannot be pronounced a violation of the defendant's rights to inquire of the expert as to the effect of certain of its elements standing alone when mixed with gasoline. The questions were admissible under the principles stated in *Commonwealth* v. *Russ,* 232 Mass. 58, 72–75. They do not fall within the inhibitions illustrated by *Connor* v. *O'Donnell,* 230 Mass. 39, 42, *Commonwealth* v. *Williams,* 244 Mass. 515, 521, *Stoddard* v. *Winchester,* 157 Mass. 567, 575, and *Biancucci* v. *Nigro,* 247 Mass. 40. They did not call for answers beyond the range of the expert knowledge of the witness.

The testimony of the expert was not open to the objection that he attempted to pass upon the truth of other evidence or to base his conclusions on unstated inferences from other

evidence. His experiments were admissible within the discretion of the trial judge. We find no reversible error in the evidence of this witness. *Commonwealth* v. *Tucker,* 189 Mass. 457, 477–479.

> *Denial of motion in arrest of judgment affirmed. Exceptions overruled.*